J-A24036-16

2016 PA Super 234

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| TYLER J. BLANGO | |
| Appellant | No. 3269 EDA 2015 |

Appeal from the Judgment of Sentence dated June 12, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007282-2014

BEFORE:  BOWES, J., OTT, J., and SOLANO, J.

OPINION BY SOLANO, J.:                                  **FILED OCTOBER 31, 2016**

Appellant Tyler J. Blango appeals from the judgment of sentence imposed by the trial court after Appellant pled guilty to third-degree murder, conspiracy to commit third-degree murder, carrying a firearm without a license, carrying a firearm on the streets of Philadelphia, and possessing an instrument of crime.[1]  On appeal, Appellant asserts that the trial court erred when it denied his pre-sentence petition to withdraw his guilty plea.  After careful review, we affirm.

Appellant entered an open guilty plea on August 28, 2014.  The trial court summarized the underlying facts as follows:

> The factual basis proffered by the Commonwealth for [Appellant's] guilty plea, to which [Appellant] agreed, established the following:  On April 11, 2013, a group of high school students associated with the Lansdowne section of

---

[1] 18 Pa.C.S. §§ 2502(c), 903(c), 6106, 6108, and 907, respectively.

Philadelphia, and a group of high school students associated with the Wynnefield section of Philadelphia, met at the Tustin Playground adjacent to Overbrook High School, in order for one student from each school to engage in a fistfight. The group included [Appellant] and his co-defendants Rahim Pleasant, Jaquan Jordan, and Stanley Postell. While Jordan and another student were fighting, Postell made a comment that he had a firearm and would use it. Postell and [Appellant] both pulled out firearms during the course of the fistfight. Postell fired his weapon at least five times, while [Appellant] was attempt[ing] to fire his own weapon, which failed to fire. Pleasant and Jordan also drew firearms and fired them. During the course of this firefight, a spectator to the fight, Bernard Scott, was struck once in the chest by a bullet that came from Postell's firearm. Scott was transported to Lankenau Hospital, where he was pronounced dead. [Appellant] was struck by a bullet in the hip during the firefight. Police ultimately recovered multiple firearms, including [Appellant's] firearm, which was a .38 caliber pistol.

Trial Court Opinion, 12/11/15, at 2 (footnote and citation to notes of testimony omitted).

Appellant was charged with the aforementioned offenses. As noted above, Appellant entered a guilty plea on August 28, 2014. As part of his plea agreement, Appellant agreed to cooperate with the Commonwealth by testifying against two of his co-defendants, Jaquan Jordan and Stanley Postell. *Id.* at 4.[2] In addition, Appellant agreed to provide information regarding an unrelated shooting involving an individual named Glenn Long, who was also known as "Big Dog" or "Glenn Mole." N.T., 8/28/14, at 31.

---

[2] On July 11, 2014, the Commonwealth filed a Notice of Joint Trial in which it expressed the intention to try Appellant with co-defendants Postell, Jordan, and Rahim Pleasant, pursuant to Rule 582 of the Rules of Criminal Procedure.

Appellant was called to testify at Long's trial on April 9, 2015, but repudiated the information he had provided implicating Long, and then threatened Long as he left the witness stand. N.T., 6/12/15, at 30-31. As a result, the Commonwealth presented the trial court with a sentencing memorandum in which it requested that Appellant be sentenced to 35–70 years' incarceration. *Id.* at 30, 35. A day later, on May 15, 2015, Appellant filed a pre-sentence motion to withdraw his guilty plea. On June 12, 2015, the trial court denied Appellant's motion and sentenced him to an aggregate 24–48 years' incarceration. Appellant filed a post-sentence motion for reconsideration of sentence on June 17, 2015, and the trial court denied that motion on October 1, 2015. Appellant then filed this timely appeal.

On appeal, Appellant presents a single issue for our review:

> Whether the [trial] court erred when it denied [Appellant's] petition to withdraw guilty plea?

Appellant's Brief at 5.

Preliminarily, we recognize that at "any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct *sua sponte,* the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty." Pa.R.Crim.P 591(A). The Supreme Court of Pennsylvania recently clarified the standard of review for considering a trial court's decision regarding a defendant's pre-sentence motion to withdraw a guilty plea:

> [T]rial courts have discretion in determining whether a withdrawal request will be granted; such discretion is to be

- 3 -

administered liberally in favor of the accused; and any demonstration by a defendant of a fair-and-just reason will suffice to support a grant, unless withdrawal would work substantial prejudice to the Commonwealth.

***Commonwealth v. Carrasquillo***, 115 A.3d 1284, 1285, 1291–92 (Pa. 2015) (holding there is no *per se* rule regarding pre-sentence request to withdraw a plea, and bare assertion of innocence is not a sufficient reason to require a court to grant such request).[3]  We will disturb a trial court's decision on a request to withdraw a guilty plea only if we conclude that the trial court abused its discretion.  ***Commonwealth v. Gordy***, 73 A.3d 620, 624 (Pa. Super. 2013).

Within the argument section of his brief, Appellant contends that the trial court erred in denying his request to withdraw his plea because he is "actually innocent," and the Commonwealth breached the terms of the "cooperation agreement."  Appellant's Brief at 9-10.  Appellant further states that the Commonwealth "breached the terms of the cooperation agreement by questioning the Appellant without counsel and contrary to an oral agreement."  ***Id.*** at 10.

First, we note that Appellant fails to expand upon, detail, cite to the record, or otherwise develop his general claim of innocence and allegation of

---

[3] In contrast, **after** the court has imposed a sentence, a defendant may withdraw his guilty plea "only where necessary to correct a manifest injustice."  ***Commonwealth v. Prendes***, 97 A.3d 337, 352 (Pa. Super. 2014).

a breached agreement, causing these claims to be waived. ***Commonwealth v. Bavusa***, 832 A.2d 1042, 1052 (Pa. 2003) (reiterating that claims for which arguments are undeveloped are waived). We further note that, apart from waiver, both Appellant and the Commonwealth reference ***Carrasquillo***, in which our Supreme Court explained that a "defendant's innocence must be at least plausible to demonstrate, in and of itself, a fair and just reason for presentence withdrawal of a plea." 115 A.3d at 1292. The Commonwealth persuasively rebuts Appellant's broad assertion of innocence as follows:

> [Appellant's] assertion of innocence was implausible. At the time he made it, he had already testified against his former co-defendants, Stanley Postell and Jaquan Jordan (N.T. 9/18/14 at 14-108). During this testimony, [Appellant] admitted that he was the first one to pull the trigger.
>
> The timing of [Appellant's] motion adds to its implausibility. On April 9, 2015, pursuant to his cooperation agreement, [Appellant] was called to testify against Glenn Long. During testimony, he recanted his written statement to police implicating Long, claiming that it was fabricated. As he left the witness stand, he threatened Long, saying "When I touch down, you better strap up" (N.T. 6/12/15 at 27-35; Commonwealth's Sentencing Memorandum at 2). The Commonwealth responded to this breach of the cooperation agreement by submitting a sentencing memorandum requesting a sentence of thirty-five to seventy years' incarceration (*See* Commonwealth's Sentencing Memorandum, p. 4). On May 15, 2015, *one day later*, [Appellant] filed a motion to withdraw his guilty plea. Clearly, [Appellant] had not suddenly realized his innocence on that date, but was motivated by the prospect of a lengthy prison sentence.
>
> [Appellant's] assertion of innocence was thus an attempt to manipulate the system. [***Commonwealth v.***] ***Tennison***, 969 A.2d [572,] 573 [(Pa. Super. 2009)] (assertion of innocence

is not "fair and just" reason for withdrawal when it is founded upon a desire to manipulate the system).

Commonwealth's Brief at 8-9. We agree. We conclude that Appellant did not make a plausible claim of innocence and that the trial court did not abuse its discretion in declining to permit withdrawal of Appellant's guilty plea on that ground.

With respect to Appellant's claim that the Commonwealth breached the cooperation agreement, we have reviewed the record, including Appellant's written plea colloquy and the notes of testimony from Appellant's plea hearing. During the hearing, the trial court addressed Appellant as follows:

> THE COURT:      Now, aside from the fact that the Commonwealth in exchange for your guilty plea and in accordance with the memorandum of agreement[4] that was signed by you, your attorney and the district attorney on August 26th, 2014, two days ago; aside from the understanding of everything that is set forth in that agreement – and I expect the DA will go into a little bit more detail with you about what you have to do. But there are certain requirements that you have to comply with such as testifying truthfully and not withholding any information. In exchange, the Commonwealth has agreed to you plea[ding] to these reduced charges rather than face the charge of first degree murder.
>
>      Do you understand that?
>
> [APPELLANT]:      Yes.

---

[4] The memorandum of agreement is not in the record.

N.T., 8/28/14, at 16-17.

The Commonwealth subsequently addressed Appellant:

[COMMONWEALTH]: Do you remember reviewing and signing a memorandum of agreement just two days ago on August 26, 2014?

[APPELLANT]: Yes.

[COMMONWEALTH]: And where was that done?

[APPELLANT]: In your office.

[COMMONWEALTH]: Was your attorney present when that happened?

[APPELLANT]: Yes.

[COMMONWEALTH]: Did you in fact read over the four-page memorandum agreement?

[APPELLANT]: Yes.

[COMMONWEALTH]: And are those your initials at the bottom of each page?

[APPELLANT]: Yes.

[COMMONWEALTH]: Is that your signature at the end?

[APPELLANT]: Yes.

[COMMONWEALTH]: Just prior to signing the memorandum agreement, do you remember providing two statements? One statement regarding the incident, the shooting on Tustin Playground?

[APPELLANT]: Yes.

[COMMONWEALTH]: And another statement regarding a defendant who goes by the name of Big Dog, Glenn Mole?

[APPELLANT]: Yes.

| [COMMONWEALTH]: | And did you have an opportunity to review each of those statements? |
|---|---|
| [APPELLANT]: | Yes. |
| [COMMONWEALTH]: | And are both of those statements signed by you? |
| [APPELLANT]: | Yes. |
| [COMMONWEALTH]: | Do you have any corrections or changes you would like to make to either of those? |
| [APPELLANT]: | No. |

N.T., 8/28/14, at 30-32.

Thereafter, Appellant verbally entered his guilty plea on the record, and the trial court indicated that sentencing would be deferred. The Commonwealth noted that, with regard to Appellant's co-defendants, the "trial date is September 15th." N.T., 8/28/14, at 34. Relative to a date for Appellant's sentencing, the Commonwealth stated, "If we need to put a date in, what I would suggest is we put in September 29th. . . . The trial [of the co-defendants] should be over and that way we don't have any issues." *Id.* The trial court responded, "[N]ow sentencing is scheduled for September 29th. But understanding that on that date sentencing may not take place." *Id.*

Based on the foregoing, we find no merit to Appellant's broad and unsubstantiated claim that the Commonwealth breached a cooperation agreement. Appellant communicated to the Commonwealth that at the trial of Long he would testify in accordance with his pretrial statement to police.

Instead, he recanted that pretrial statement and threatened Long as he left the witness stand. As a result, counsel for the Commonwealth stated the following at Appellant's sentencing:

> It's [] clear to me that [Appellant,] as demonstrated by his behavior on the date of the murder, as demonstrated up to the day of that murder and demonstrated by his behavior up until last week, speaks in one direction and one direction only, that he is a highly intelligent manipulative dangerous violent person. There can be no question about that, none.
>
> . . .
>
> He sat down in my office with my detectives and his attorney, and I explained to him how I felt personally and how I felt professionally, and then he saw the memorandum that I wrote asking for 35 to 70 years.
>
> Even armed with all that understanding so vividly of what the consequences are, he was called to testify and instead of trying to do the right thing, instead of trying to do his best to undo the damage that he continually causes, he got up on the stand and says, no, I lied, screw you guys, I'm getting 35 to 70, I don't give a damn. I quite frankly, Judge, was shocked. I was shocked when he did what he did in court.
>
> . . .
>
> He saw an opportunity to cut Glen Long loose and thinks he would be out shortly after so that he can go out and do whatever he wants to do on the street. He was less interested in the justice system [than] taking out his personal revenge on Glen Long.
>
> The compunction, the sheer audacity in open court, this is not somebody sneaking a letter, somebody sending a message. He walked out of that courtroom on his way into the wall and in open court and said, when I touch down, you better strap up.
>
> Judge, that's appalling. Of all the violence and all the nasty and dirty things that the Court has seen, we have all experienced . . . I have never seen or heard something like that happen, certainly not with a person who had every incentive, who at every stage of his life had someone pulling for him.

N.T., 6/12/15, at 28, 30-31. Based on the record before us, the trial court could conclude that it was Appellant, and not the Commonwealth, who breached the cooperation agreement.

Finally, we turn to Appellant's claim that withdrawal of his guilty plea would not prejudice the Commonwealth. Appellant's Brief at 7-11. Even if there is a "'fair and just reason' to permit withdrawal of a guilty plea, withdrawal should not be permitted if "the prosecution has been 'substantially prejudiced.'" **Commonwealth v. Forbes**, 299 A.2d 268, 271 (Pa. 1973). It is settled law that "prejudice," in the withdrawal of a guilty plea context, requires a showing that, due to events occurring after the plea was entered, the Commonwealth is placed in a worse position than it would have been had trial taken place as scheduled. **Commonwealth v. Kirsch**, 930 A.2d 1282, 1286 (Pa. Super. 2007). For example, substantial prejudice exists if a defendant obtains "a full preview of the Commonwealth's evidence before deciding upon [his] trial strategy." **Commonwealth v. Prendes**, 97 A.3d 337, 353 (Pa. Super. 2014).

Here, the trial court explained that it denied Appellant's request to withdraw his guilty plea because there would be such prejudice. Trial Court Opinion, 12/11/15, at 4. The Commonwealth echoes the trial court, stating that Appellant "was able to preview the entirety of the Commonwealth's case." Commonwealth's Brief at 11. The Commonwealth also observes that, "if allowed to withdraw his plea, [Appellant] would have effectively obtained extrajudicial severance from his co-defendants." **Id.** at 9.

Appellant concedes that his two co-defendants have already been tried, but responds: "[T]he Commonwealth has the duty to provide the Appellant with all of the evidence that it wishes to present against him prior to trial. The Appellant fails to understand how the Commonwealth would be prejudiced since it has the burden of proof to prove each and every element of each crime beyond a reasonable doubt." Appellant's Brief at 10-11.

Our review once again reveals no abuse of discretion by the trial court. In determining that the Commonwealth would be prejudiced by the withdrawal of Appellant's guilty plea, the trial court explained:

The issue for me is whether or not there is substantial prejudice.

I looked at the [parties'] briefs here on both sides of this equation, and I think unquestionably there is substantial prejudice to the Commonwealth based on the facts as they occurred here. . . .

Some of the things I agree with defense counsel are not determinative, but taking everything together, I think the Commonwealth is overwhelmingly prejudiced.

This is a situation where you have a case going forward. Everybody's joined and properly tried together. [Appellant] cuts a deal, cooperates, testifies and attempts to withdraw after the entire case has been tried after viewing the Commonwealth's entire case requiring the Commonwealth to place the entire case before a different jury once again.

I mean, for one thing, that would be a way to get a severance. You plead guilty and then afterwards move to withdraw your plea after the trial is over.

As the Commonwealth points out, the situation has changed with several of their witnesses. Wilmer Colon has an open murder case, has now been convicted of third degree murder.

- 11 -

Antoine Gardener has open theft cases. He was convicted of felony theft. Now he's in custody. Rahim Pleasant was a cooperating witness with no agreement as to sentence and had an open case. He's now been sentenced. Stanley Postell has been convicted of first-degree murder. That's over, and Mr. Jordan's trial is over. Witness Basil Harrison had an open robbery. This is in the Commonwealth's memorandum.

Those are substantial changes, and even setting all that aside, the mere fact that [Appellant] got himself out of the joint trial, now gets a chance to view the Commonwealth's entire case and then wishes to withdraw his plea and go forward because he's unhappy with a sentencing recommendation of the Commonwealth after he reneged on his plea agreement, I have – I have no doubt – at least it's my firm belief that that is clear substantial prejudice, and for that reason, [Appellant's] motion to withdraw the guilty plea is denied.

N.T., 6/12/15, at 3-5.

Mindful of the trial court's reasoning, we once again reference **Kirsch**, **supra**, in which we stated:

Our research reveals that there exists little case law explaining what constitutes prejudice in the withdrawal of a guilty plea context. Nevertheless, despite the dearth of caselaw, it would seem that prejudice would require a showing that due to events occurring after the plea was entered, the Commonwealth is placed in a worse position than it would have been had trial taken place as scheduled. [FN5: Along these lines, in **Commonwealth v. Campbell**, 309 Pa.Super. 214, 455 A.2d 126, 128 (1983), we described the prejudice standard as being satisfied "where the prosecution substantially relies upon the plea to its detriment."] This follows from the fact that the consequence of granting the motion is to put the parties back in the pre-trial stage of proceedings. This further follows from the logical proposition that prejudice cannot be equated with the Commonwealth being made to do something it was already obligated to do prior to the entry of the plea.

930 A.2d at 1286.

In applying **Kirsch**, we agree that "the consequence of granting the [withdrawal] motion is to put the parties back in the pre-trial stage of proceedings." 930 A.2d at 1286. Here, however, if the trial court had permitted Appellant to withdraw his plea, the parties could not have been returned to the pre-trial stage of proceedings because, among other reasons, Appellant had testified at two of his co-defendants' trials and "previewed" the Commonwealth's case. In addition, Appellant's two co-defendants (Jaquan Jordan and Stanley Postell) had already been convicted and sentenced, while Appellant's third co-defendant (Rahim Pleasant) had entered a plea and had been sentenced.

Of further significance is the fact that allowance of the withdrawal of the guilty plea would have resulted in Appellant gaining "extrajudicial severance from his co-defendants." Commonwealth Brief at 9; **see also** N.T., 6/12/15, at 4. The trial court expressly noted that Appellant "never applied" for a severance, "which the Court would not have granted." Trial Court Opinion, 12/11/15, at 4. Given this scenario, we find no abuse of discretion by the trial court in determining that the Commonwealth would have been substantially prejudiced by the withdrawal of Appellant's plea.

Accordingly, after thorough review, we conclude that the trial court did not abuse its discretion when it denied Appellant's pre-sentence motion to withdraw his guilty plea.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/31/2016</u>