J-S79042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BERNARD FORD | : | |
| | : | |
| Appellant | : | No. 3692 EDA 2016 |

Appeal from the Judgment of Sentence November 14, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0002505-2014,
MC-51-CR-0044110-2013

BEFORE:  GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JANUARY 19, 2018**

Appellant, Bernard Ford, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his open guilty plea to third-degree murder and conspiracy.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.  For purposes of our disposition, we add that counsel filed a petition for leave to withdraw as counsel and ***Anders*** brief in this Court on July 25, 2017.  On August 16, 2017, Appellant filed a *pro se* response.

As a preliminary matter, counsel seeks to withdraw his representation

_____

[1] 18 Pa.C.S.A. §§ 2502(c) and 903, respectively.

pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *Commonwealth v. Santiago*, 602 Pa. 159, 978 A.2d 349 (2009). *Anders* and *Santiago* require counsel to: (1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; (2) file a brief referring to anything in the record that might arguably support the appeal; and (3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. *Santiago, supra* at 173-79, 978 A.2d at 358-61. Substantial compliance with these requirements is sufficient. *Commonwealth v. Wrecks*, 934 A.2d 1287, 1290 (Pa.Super. 2007). After establishing that counsel has met the antecedent requirements to withdraw, this Court makes an independent review of the record to confirm that the appeal is wholly frivolous. *Commonwealth v. Palm*, 903 A.2d 1244, 1246 (Pa.Super. 2006).

In *Santiago, supra*, our Supreme Court addressed the briefing requirements where court-appointed appellate counsel seeks to withdraw representation:

> Neither *Anders* nor [*Commonwealth v. McClendon*, 495 Pa. 467, 434 A.2d 1185 (1981)] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under *Anders* are references to anything in the record that might arguably support the appeal.

- 2 -

\* \* \*

> Under **Anders**, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal.

**Santiago, supra** at 176, 177, 978 A.2d at 359, 360. Thus, the Court held:

> [I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Id.** at 178-79, 978 A.2d at 361.

Instantly, Appellant's counsel filed a petition to withdraw. The petition states counsel conducted a conscientious review of the record and determined the appeal is wholly frivolous. Counsel also supplied Appellant with a copy of the brief and a letter explaining Appellant's right to retain new counsel or to proceed *pro se* to raise any additional issues Appellant deems worthy of this Court's attention. (**See** Letter to Appellant, dated July 24, 2017, attached to Petition for Leave to Withdraw as Counsel). In the **Anders** brief, counsel provides a summary of the facts and procedural history of the case. Counsel's argument refers to relevant law that might arguably support Appellant's issue. Counsel further states the reasons for his conclusion that the appeal is wholly frivolous. Therefore, counsel has

substantially complied with the requirements of **Anders** and **Santiago**.

Counsel raises the following issue on Appellant's behalf:

> DID THE HONORABLE COURT COMMIT AN ABUSE OF DISCRETION BY REFUSING TO PERMIT APPELLANT TO WITHDRAW HIS GUILTY PLEA BECAUSE THE PLEA WAS ENTERED UKNOWINGLY AND INVOLUNTARILY DUE TO THE FACT THAT APPELLANT WAS SUFFERING FROM MENTAL ILLNESS AT THE TIME HE ENTERED HIS PLEA AND HAD NOT TAKEN NECESSARY MEDICATION THE NIGHT BEFORE HE ENTERED HIS GUILTY PLEA?

(**Anders** Brief at 14)[2].

This Court reviews "a trial court's ruling on a pre-sentence motion to withdraw a guilty plea for an abuse of discretion." **Commonwealth v. Islas**, 156 A.3d 1185, 1187 (Pa.Super. 2017). "An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, manifest unreasonableness, and/or misapplication of law." **Commonwealth v. Gordy**, 73 A.3d 620, 624 (Pa.Super. 2013), *appeal denied*, 624 Pa. 687, 87 A.3d 818 (2014). "By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record." **Id.**

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Genece E. Brinkley, we conclude Appellant's issue on appeal merits no relief. The trial court opinion comprehensively discusses and properly disposes of the

---

[2] Appellant also raised this claim in his *pro se* response to counsel's petition for leave to withdraw as counsel.

question presented. (*See* Trial Court Opinion, filed June 5, 2017, at 9-21) (finding: to extent Appellant asserts plea counsel was ineffective because he "forced" Appellant to enter guilty plea, this claim is premature and must wait until collateral review; additionally, Appellant failed to demonstrate that allowing withdrawal of his guilty plea would promote fairness and justice; record belies Appellant's claim that he did not understand consequences or terms of his guilty plea, due to his mental health issues; at November 3, 2015 plea hearing, Appellant reviewed and signed written guilty plea colloquy with counsel; court then conducted thorough oral colloquy with Appellant in which it discussed nature of charges, factual basis of plea, permissible sentencing ranges, right to jury trial, Appellant's presumption of innocence, Appellant's level of education, and Appellant's mental health issues; nothing in record indicates Appellant was confused or disoriented; in fact, Appellant answered court's questions during oral colloquy in lucid and coherent manner; Appellant is bound by statements made at guilty plea hearing; with respect to Appellant's assertion that he was not informed of his obligation to testify for Commonwealth, trial counsel stated he explained every component of plea agreement to Appellant, including Appellant's obligation to testify for Commonwealth at trial of Appellant's co-defendants; significantly, Appellant's actions after execution of plea agreement demonstrate Appellant's awareness of requirement to testify for Commonwealth; further, Commonwealth would suffer substantial prejudice if

court allowed Appellant to withdraw guilty plea; through Appellant's involvement in co-defendants' case, Appellant was aware of Commonwealth's evidence and trial strategy; as such, allowing Appellant to withdraw plea would substantially impair Commonwealth's ability to prosecute Appellant; under these circumstances, court properly denied Appellant's motion to withdraw his guilty plea).  Following our independent review of the record, we conclude the appeal is frivolous.  ***See Palm, supra***.  Accordingly, we affirm on the basis of the trial court opinion and grant counsel's petition to withdraw.

Judgment of sentence affirmed; petition to withdraw is granted.


*Judgment Entered.*

_____

*Joseph D. Seletyn, Esq.*
*Prothonotary*


Date: <u>1/19/2018</u>

Circulated 12/21/2017 02:21 PM

**IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION**

**COMMONWEALTH**      :      **CP-51-CR-0002505-2014**

:

**vs.**      CP-51-CR-0002505-2014 Comm v Ford, Bernard
Opinion



7956374211

**BERNARD FORD**      :      **SUPERIOR COURT
3692 EDA 2016**

## OPINION

**BRINKLEY, J.**          **JUNE 5, 2017**

Defendant Bernard Ford appeared before this Court and pled guilty to Third Degree Murder and Criminal Conspiracy. Prior to pleading guilty, Defendant entered into a Memorandum of Agreement with the Commonwealth, wherein Defendant agreed to testify as a Commonwealth witness against his co-conspirators. However, at his co-conspirators' trial, Defendant denied any knowledge of the crime. Subsequently, Defendant, through counsel, made an oral motion to withdraw his guilty plea. This Court denied the motion. A jury found Defendant's co-conspirators not guilty. This Court sentenced him to an aggregate sentence of 25-50 years state incarceration, with credit for time served. Defendant filed a Notice of Appeal to the Pennsylvania Superior Court and raised the following issue on appeal: whether the trial court abused its discretion when it denied Defendant's motion to withdraw his guilty plea. This Court's judgment of sentence, and denial of Defendant's motion to withdraw his guilty plea, should be affirmed.

## FACTS AND PROCEDURAL HISTORY

On July 14, 2013, at approximately 11:18 a.m., Philadelphia Police Officers responded to a radio call reporting gunshots at 2048 Bellmore Street. Upon arrival, police officers discovered victim Alfred McCrory ("McCrory," a.k.a. "Doo-Doo") lying in the street with multiple gunshot wounds to his head and torso. McCrory was transported to Temple University Hospital where he was pronounced dead at 11:55 a.m. On July 15, 2013, the assistant medical examiner determined the cause of death to be gunshot wounds and ruled McCrory's death a homicide.

After a four-month long investigation, which included interviewing several eyewitnesses to the murder as well as discovering incriminating texts on McCrory's cellular phone, homicide detectives obtained arrest warrants for Defendant and two other men: Terrence Johnson ("Johnson"), and Spencer Hutchins ("Hutchins"). On November 14, 2013, Defendant was arrested at his apartment and charged with murder and conspiracy. On the day of his arrest, Defendant gave a statement to police, in which he described being present at the scene of the murder. He identified the men involved in the shooting, and stated that they all knew each other because they sold drugs together on that block. He stated that McCrory "ran" the block and collected "rent" from Defendant and his friends for permission to sell crack there, but then later McCrory began bringing in new people to the block to sell drugs and did not charge them rent. Defendant stated that he had known McCrory since childhood. The next day, Johnson and Hutchins were arrested and also charged with murder and conspiracy.

On November 2, 2015, Defendant, with his defense counsel David Desiderio, Esquire, entered into an agreement to cooperate with the Commonwealth. Defendant agreed to plead guilty to Third Degree Murder and Criminal Conspiracy. He further agreed to testify as a Commonwealth witness against Hutchins and Johnson at their joint jury trial. In exchange, the

2

Commonwealth agreed to make a sentencing recommendation commensurate with Defendant's conduct and level of cooperation.

On November 3, 2015, Defendant appeared before this Court and pled guilty to murder and criminal conspiracy. At the guilty plea hearing, this Court conducted a thorough on-the-record colloquy to ensure that Defendant's guilty plea was knowing and voluntary. Defendant disclosed his mental health issues, explaining that he had been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD), schizophrenia and depression, and that he took medication daily, although he did not take it on the night before his plea because he left the prison before it was distributed. Defendant stated that he understood why he was in court and understood that he was pleading guilty. He denied that any of his mental health conditions would prevent him from knowingly and voluntarily pleading guilty. This Court accepted Defendant's guilty plea and deferred sentencing to allow for the preparation of a presentence investigation (PSI) report and a mental health evaluation.

On November 6, 2016, Defendant traveled to the District Attorney's Office for witness preparation. His attorney, Mr. Desiderio, was unable to accompany him due to an ongoing family emergency; however, Defendant was able to speak to Mr. Desiderio via telephone during the prep session when he had questions or concerns.

Nine days after his guilty plea, on November 12, 2015, Defendant appeared before this Court as a Commonwealth witness in the matter of two of his co-conspirators, Hutchins and Johnson, who were tried together before a jury. Instead of testifying consistent with his prior statements regarding the murder, Defendant denied even knowing the decedent, denied any knowledge of the murder, and denied making an agreement with the Commonwealth. He further

stated that his attorney, Mr. Desiderio, had forced him to plead guilty and that he was not on his medication at the time of his guilty plea before this Court. (N.T. 11/12/15, p. 7-55).

The Court was adjourned until November 16, 2015. On that day, Defendant appeared before this Court with new counsel, Perry DeMarco, Jr., Esquire. Defense counsel argued an oral motion to withdraw Defendant's guilty plea. He argued that Defendant was "forced" into an agreement with the Commonwealth, that Defendant was poorly advised by Mr. Desiderio, and that Defendant did not understand the Memorandum of Agreement. (N.T. 11/16/15, p. 5-6). Defendant testified he had learning disabilities, specifically ADHD, schizophrenia and bipolar disorder, and that he took the drugs Ritalin, Zyprexa, and Benadryl to treat these issues. Defendant stated that he signed the Memorandum of Agreement with the Commonwealth without ever reading the document or having it explained to him by Mr. Desiderio. He testified that when he signed the agreement, he did not understand that he was cooperating with the Commonwealth and did not know that he would be called as a witness. He further stated that he did not take his medications on the day he signed the agreement because they had not been distributed yet at the prison when he left for the District Attorney's (DA) Office. Defendant testified that Mr. Desiderio was not present when he visited the DA's Office again to prepare to testify at trial. He further testified that he did not take his medication on the day he appeared before this Court to plead guilty. He stated that at his guilty plea hearing, he did not understand his colloquy and did not understand any of the judge's questions. Defendant further testified that he had not taken his medication on the day he was arrested and gave a statement to police, wherein he described being present at the scene of the crime. Id. at 7-21. The defense rested on its motion at the conclusion of Defendant's testimony.

4

Assistant District Attorney Brian Zarallo, Esquire, testified first for the Commonwealth. He testified that he and ADA Whitehead met with Defendant and Mr. Desiderio at the District Attorney's Office to discuss the Memorandum of Agreement. ADA Whitehead had a family emergency, so ADA Zarallo stepped in to review the agreement with Defendant and Mr. Desiderio. Zarallo testified that he left Defendant and Mr. Desiderio alone for approximately 35-40 minutes so they could review the agreement. When he returned, Mr. Desiderio noted some minor changes that needed to be made to the document, which were quickly corrected. Zarallo testified that he recalled Defendant's demeanor that day as being "like an individual who didn't necessarily want to cooperate but given the manner of the case, his understanding of the amount of evidence against him, he came off to me like somebody that had wrapped his head around this as really my best and only way to avoid what will be an eventual life sentence." Id. at 101. Zarallo testified that at no point did Defendant appear to be confused or disoriented. Id. at 90-102.

Assistant District Attorney Allison Ruth testified next. She testified that she stood in for ADA Whitehead at Defendant's guilty plea hearing because ADA Whitehead had been called away on a family emergency. She testified that on the day of the plea, she signed Defendant's written guilty plea colloquy immediately after Defendant and Mr. Desiderio signed it. She stated that they all signed the colloquy prior to the guilty plea hearing before this Court. Ruth testified that this Court conducted an oral on-the-record colloquy with Defendant and that in her opinion, Defendant appeared to understand the nature of the proceedings and knew what he was doing. She stated that Defendant was "completely engaged" in the proceeding and even asked a question regarding the domestic relations consequences of his plea that led him him to confer

5

with his attorney off the record for a moment. Ruth testified that at no time did Defendant say he did not want to plead guilty or that he was innocent of the charges against him. Id. at 116-124.

David Desiderio, Esquire testified next for the Commonwealth. He testified that as Defendant's counsel, he had been in contact with him several times via phone or in person at the prison. He testified that he spent at least 4 ½ hours with Defendant at the District Attorney's Office on November 2, 2015, working through the Memorandum of Agreement. He discussed with Defendant the incriminating evidence against him, including the eyewitness accounts, the text messages recovered from the decedent's cell phone, and the statement Defendant gave police after his arrest that placed him at the scene of the murder. He then provided Defendant with his professional opinion regarding the probability of a guilty verdict. Desiderio testified that when he asked Defendant how he wished to proceed, Defendant replied, "Whatever is best for me." Desiderio stated that he believed Defendant's best chance was to offer himself as a Commonwealth witness, plead guilty to third-degree murder, and testify for the Commonwealth. He testified that he explained this to Defendant many times. He further stated that he reviewed with Defendant in great detail the proffer letter, and later the Memorandum of Agreement. Desiderio testified that he read each paragraph out loud with Defendant and explained to him what each item meant "in common parlance," offering additional explanation if necessary. Desiderio testified that when the Commonwealth came in the room with a map of the crime scene, Defendant, without any coaxing, pointed out where Hutchins was standing, identified the direction from which McCrory had been walking prior to being gunned down, and explained the location of the fire cartridge casings. Id. at 129-137.

Desiderio stated that "beyond a shadow of a doubt, [Defendant] knew why he was there. If he didn't understand why he was there, he wouldn't have been there." He further stated that

6

Defendant "was very much in tune with what was happening in that office at that time," and at no time appeared incoherent. Desiderio emphatically denied that he forced Defendant to plead guilty, stating, "Sir, I would not know how to force somebody into a plea who is standing before a judge. I don't know what that means. The answer, the short answer to that is absolutely not." Id. at 155.

Desiderio testified that on November 6, 2015, Defendant went alone to the District Attorney's Office to prepare to testify. Desiderio was unable to accompany him on that date, but the Commonwealth attorney put Defendant on the phone with Desiderio when he appeared to have misgivings regarding his cooperation. Desiderio stated that he reviewed everything with Defendant again and explained the agreement once more. Desiderio testified that Defendant's misgivings were based upon pressure from family and neighborhood friends, and that Defendant was feeling nervous about testifying against close friends. Desiderio stated that at no time during the guilty plea hearing did he feel as though Defendant was not satisfied with his representation or that Defendant did not understand the nature of the proceedings. Id. at 137-164.

After hearing argument from both counsel and reviewing the transcript from the guilty plea colloquy on the record, this Court denied Defendant's motion to withdraw his plea, finding that he knowingly, intelligently and voluntarily pled guilty, that he was satisfied with his lawyer's representation at the time of his plea, and that Defendant actively participated in preparing and placing himself on the crime scene map used at Hutchins' and Johnson's trial. Id. at 172-179.

On November 17, 2015, Hutchins' and Johnson's trial resumed. Subsequently, the jury found Hutchins and Johnson not guilty on all charges.

On May 3, 2016, newly appointed defense counsel Jason Kadish, Esquire, filed another Petition to Withdraw Guilty Plea. This Court denied the petition at Defendant's sentencing on November 14, 2016. This Court stated on the record:

> And I'm going to put in the record that I've extensively reviewed any mental health issues with the defendant on the record at the time I took the guilty plea on November 3, 2015, and that review of that circumstance is clearly spelled out in the colloquy that I had with the defendant. And therefore, there is absolutely no reason for me to do anything any different than what I did before, and I stand by my decision to deny the withdrawal of the guilty plea.

(N.T. 11/14/16, p. 7-8).

On November 14, 2016, Defendant appeared before this Court for sentencing. Defense counsel recommended a sentence of 15 to 20 years state incarceration. The Commonwealth recommended a sentence of 30 to 60 years state incarceration. This Court sentenced Defendant to 20 to 40 years state incarceration on the charge of Third-degree Murder, plus 5 to 10 years state incarceration on the charge of Criminal Conspiracy, for an aggregate term of 25 to 50 years state incarceration. Defendant was ordered to receive dual diagnosis treatment, undergo random urinalysis, obtain his GED and enroll in a job training program while imprisoned. This Court further ordered Defendant to seek and maintain employment upon release and pay all mandatory court costs. Id. at 29.

On December 5, 2016, Defendant filed a Notice of Appeal to Superior Court. After resolving issues regarding court-appointment of defense counsel and obtaining all notes of testimony, this Court ordered Defendant to file a Concise Statement of Errors Complained of on Appeal Pursuant to P.A. R.A.P. 1925(b). Newly appointed appellate counsel John Belli, Esquire did so on March 27, 2017. Mr. Belli indicated that he intended to file an Anders Brief and that Defendant intended to raise the following issue on appeal: "The Honorable Court committed an

8

abuse of discretion by refusing to permit Appellant to withdraw his guilty plea because the plea was entered unknowingly, unintelligently, and involuntarily due to ineffective assistance of counsel and the fact that appellant was suffering from mental illness at the time he entered his plea and had not taken necessary medication the night before he [entered] his guilty plea."

## ISSUE

I.    WHETHER THIS COURT ABUSED ITS DISCRETION BY DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA.

## DISCUSSION

I.    THIS COURT PROPERLY DENIED DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA BECAUSE THE TRANSCRIPT FROM DEFENDANT'S GUILTY PLEA COLLOQUY, AS WELL AS TESTIMONY FROM DEFENSE COUNSEL AND THE COMMONWEALTH REGARDING THE MEMORANDUM OF AGREEMENT, DEMONSTRATED THAT DEFENDANT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY PLED GUILTY TO THIRD DEGREE MURDER.

This Court properly denied Defendant's motion to withdraw guilty plea because the record demonstrated that Defendant knowingly, intelligently, and voluntarily decided to plead guilty after entering into a Memorandum of Agreement with the Commonwealth. Defendant claims that his guilty plea was not voluntary due to ineffective assistance of counsel and because Defendant suffered from mental illness, had not taken his medication on the days when he signed the Memorandum of Agreement, met with the Commonwealth to prepare for trial, and appeared in Court to plead guilty. This claim is without merit.

As a threshold matter, Defendant's claim of ineffective assistance of counsel is premature, as this claim is not cognizable on direct appeal. In Commonwealth v. Holmes, the

9

Pennsylvania Supreme Court reaffirmed the Grant[1] rule, holding that "claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal." 79 A.3d 562 (Pa.2013). The Court carved out two narrow exceptions: (1) "extraordinary circumstances where the trial court, in the exercise of its discretion, determines that a claim (or claims) of ineffective assistance is both meritorious and apparent from the record so that immediate consideration and relief is warranted;" and (2) where, upon good cause shown and where the defendant expressly waives his right to seek PCRA review, "the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness, including non-record-based claims, on post-verdict motions and direct appeal." Id. at 563-64, 577-78. Neither of these narrow, extraordinary exceptions are present in the case at bar. Therefore, Defendant's ineffective assistance of counsel claim should be deemed premature as it is not cognizable on direct appeal.

Even if not premature, no relief is due. Defendant's claim that his mental health issues prevented him from knowingly, intelligently and voluntarily pleading guilty is entirely without merit. Under Pennsylvania law, "at any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty." Pa. R. Crim. P. 591(A). There is no absolute right to withdraw a guilty plea; rather, the trial court has discretion in determining whether the defendant's request should be granted. Commonwealth v. Carrasquillo, 115 A.3d 1284 at 1291-92 (Pa. 2015) (citing Commonwealth v. Forbes, 450 Pa. 185, 190, 299 A.2d 268, 271 (1973)). A trial court's decision whether to permit a guilty plea to be withdrawn should not be disturbed absent an abuse of that discretion. Commonwealth v.

---

[1] Commonwealth v. Grant, 572 Pa. 48, 813 A.2d 726 (2002).

10

Prysock, 972 A.2d 539, 541 (Pa. Super. 2009). "An abuse of discretion exists when a defendant shows any 'fair and just' reasons for withdrawing his plea absent 'substantial prejudice' to the Commonwealth." Commonwealth v. Elia, 83 a.3d 254, 261 (Pa. Super. 2013) (quoting Commonwealth v. Pardo, 35 A.3d 1222, 1227 (Pa. Super. 2011)).

The Pennsylvania Supreme court in Carrasquillo outlined the standard a trial court should use when exercising its discretion regarding a motion to withdraw a guilty plea: "More broadly, the proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice. The policy of liberality remains extant but has its limits, consistent with the affordance of a degree of discretion to the common pleas court." Carrasquillo, 115 A.3d at 1292. "A sincere and plausible assertion of innocence has been held to satisfy the 'fair and just reason' standard" for granting a pre-sentence motion to withdraw a guilty plea. Id.

The trial court must also examine whether the prosecution would suffer "substantial prejudice" should the court grant the defendant's request to withdraw his guilty plea. It is well settled that substantial prejudice to the Commonwealth, in the context of withdrawing a guilty plea, requires a "showing that, due to events occurring after the plea was entered, the Commonwealth is placed in a worse position than it would have been had trial taken place as scheduled." Commonwealth v. Blango, 150 A.3d 45, 51 (Pa.Super.2016) (citing Commonwealth v. Kirsch, 930 A.2d 1282, 1286 (Pa.Super.2007)). Substantial prejudice exists where a defendant "obtains a full preview of the Commonwealth's evidence before deciding upon [his] trial strategy." Blango, 150 A.3d at 51 (quoting Commonwealth v. Prendes, 97 A.3d 337, 353 (Pa. Super. 2014).

11

In addition, the law "presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise." Commonwealth v. Reid, 117 A.3d 777, 783 (2015)(quoting Commonwealth v. Pollard, 832 A.2d 517, 523 (Pa.Super.2003)).

The Pennsylvania Superior Court explained:

> [O]nce a defendant has entered a plea of guilty it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Therefore, where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evidence that defendant understood the nature of the charges against him, the voluntariness of the plea is established. **A defendant is bound by the statements he makes during his plea colloquy, and may not assert grounds for withdrawing the plea that contradict statements made when he pled.**

Commonwealth v. McCauley, 797 A.2d 920 (Pa.Super. 2001) (quoting Commonwealth v. Stork, 737 A.2d 789, 790-91 (Pa.Super.1999), *appeal denied* 564 Pa. 709, 764 A.2d 1068 (2000)) (emphasis added). A "written plea colloquy that is read, completed and signed by the defendant and made part of the record may serve as the defendant's plea colloquy when supplemented by an oral, on-the-record examination." Reid, 117 A.3d at 782 (citing Commonwealth v. Morrison, 878 A.2d 102, 108 (Pa.Super.2005); Pa.R.Crim.P. 590, Comment. "[A] plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea." Reid, *supra* (quoting Commonwealth v. Fluharty, 429 Pa.Super.213, 632 A.2d 312, 315 (1993)). "Determining whether a defendant understood the connotations of his plea and its consequences requires an examination of the totality of the circumstances surrounding the plea. McCauley, *supra* (citing Commonwealth v. Yeager, 454 Pa.Super.428, 685 A.2d 1000, 1004 (1996), *appeal denied*, 549 Pa. 716, 701 A.2d 577 (1997)).

12

In order to determine "the voluntariness of the plea and whether the defendant acted knowingly and intelligently, the trial court must, at a minimum, inquire into the following six areas:

> (1) Does the defendant understand the nature of the charges to which he is pleading guilty?
>
> (2) Is there a factual basis for the plea?
>
> (3) Does the defendant understand that he has a right to trial by jury?
>
> (4) Does the defendant understand that he is presumed innocent until he is found guilty?
>
> (5) Is the defendant aware of the permissible ranges of sentences and/or fines for the offenses charged?
>
> (6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?"

McCauley, *supra*, (citing Commonwealth v. Young, 695 A.2d 414, 417 (Pa.Super.1997)). The law "does not require that [the defendant] be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [his] decision to plead guilty be knowingly, voluntarily and intelligently made." Reid, *supra* (quoting Commonwealth v. Anderson, 995 A.2d 1184, 1192 (Pa.Super.2010)).

In Stork, the court found the defendant failed to meet his burden where the defendant participated in a complete and thorough written colloquy which was followed by a lengthy oral colloquy, and where the defendant was specifically asked whether he was satisfied with counsel and whether his plea was entered into voluntarily and defendant answered in the affirmative. In Commonwealth v. Kasecky, the court held that the defendant was not entitled to relief where he did not inform the court he was taking medication during his oral on-the-record guilty plea colloquy and later failed to proffer any expert testimony that the medication he was taking

13

rendered him incapable of entering a knowing and intelligent plea. 442 Pa.Super. 139, 143 (1995). The court noted in a footnote that the in written guilty plea colloquy, the defendant in Kasecky "acknowledged being on medication; that he, nonetheless, was able to understand the questions and answer them correctly; and that he both fully understood the questions and his decision to plead guilty." Id. at 143 n.2. Last, in Reid, the court found the defendant voluntarily and intelligently entered into his guilty plea where defendant confirmed he understood the terms of the agreement, the trial court conducted a lengthy guilty plea colloquy in which the defendant fully participated, the trial court explained defendant's right to trial by jury, his post-guilty plea appellate rights and defendant indicated he understood, and the Commonwealth provided a lengthy factual bases for each charge after which defendant admitted he was guilty. 117 A.3d at 783.

In the case at bar, Defendant has failed to demonstrate that permitting him to withdraw his guilty plea would promote fairness and justice. Defendant has made no claim that he is actually innocent of the crimes charged. Instead, he claims that his lawyer was ineffective for failing to explain to him the significance and consequences of the Memorandum of Agreement and associated guilty plea. He further claims that he was not taking his mental health medications on the days he signed the Memorandum of Agreement, met with the Commonwealth to prepare to testify at his co-conspirators' trial, and appeared before this Court to plead guilty, and therefore was not lucid and had no idea what he was doing. These claims are entirely without merit as they are not supported by the totality of the circumstances surrounding his plea.

Defendant claims that trial counsel Mr. Desiderio never explained the guilty plea or the Memorandum of Agreement to him. He claims that he did not understand that he was pleading guilty or to what he was pleading guilty. This claim is belied by the record. At the guilty plea

14

hearing on November 3, 2015, Defendant reviewed the written guilty plea colloquy with his attorney and signed it. This Court then conducted an extremely thorough on-the-record colloquy, addressing areas outlined above. This Court asked Defendant several questions regarding the nature of the charges, the factual basis for the plea, the permissible sentencing ranges, the right to a trial by jury, and explained that defendant is presumed innocent until found guilty. This Court further inquired as to Defendant's level of education and ability to read and write the English language. In addition, this Court extensively questioned Defendant regarding his mental health:

THE COURT: Have you ever been a patient in a mental institution or been treated for mental illness?

DEFENDANT: Yes.

THE COURT: And when was that?

DEFENDANT: I don't know.

THE COURT: You don't know?

DEFENDANT: I wasn't in a mental hospital but I got mental health problems.

THE COURT: Okay. What is the nature of your mental health problems?

DEFENDANT: My mom said – my mom know better.

MR. DESIDERIO: I was informed, by –

THE COURT: Okay. Just one minute. The trial sheet – the trial list says ADHD, schizophrenia, and depression with special considerations. So you reported this to someone else already, right?

DEFENDANT: Yes.

THE COURT: This is on your sheet.

DEFENDANT: Yes.

THE COURT: This is on your sheet. Everybody has it.

DEFENDANT: Yes.

15

THE COURT: So what's written on the sheet says other – special considerations, other, ADHD, schizophrenia, and depression.

DEFENDANT: Yes.

THE COURT: Can you tell me, is it all three of these or –

DEFENDANT: All three.

THE COURT: And when did you – when were you first diagnosed with these conditions.

DEFENDANT: I'm not sure.

THE COURT: You're not sure. How old – you're 25 now. So how many years have you had these conditions?

DEFENDANT: Since I was 11.

THE COURT: Since you were 11. Are you taking medication?

DEFENDANT: Yes.

THE COURT: What medication are you taking?

DEFENDNAT: Zyprexin and Benadryl.

THE COURT: How often do you take it?

DEFENDANT: Every night.

THE COURT: Okay. So you took it last night?

DEFENDANT: No, I was down in Homicide.

THE COURT: Okay. So when's the last time you took your medication?

DEFENDANT: The day before.

THE COURT: The night before?

DEFENDANT: Yeah.

THE COURT: **And when you take your medication, what does it do for you?**

DEFENDANT: **Mellow, calm.**

16

| THE COURT: | Okay. **Do you understand why you're here today?** |
|---|---|
| DEFNEDANT: | **Yes.** |
| THE COURT: | **Why are you here today?** |
| DEFENDANT: | **Enter a guilty plea.** |
| THE COURT: | And to what charge? |
| DEFENDANT: | Third degree. |
| THE COURT: | **All right, sir. And so, basically what you're saying is that right now you understand what you're doing?** |
| DEFENDANT: | **Yes.** |
| THE COURT: | And you've had a conversation with your lawyer about it? |
| DEFENDANT: | Yes. |
| THE COURT: | **And with your mental health issues you are – you still understand and your medications are working for you?** |
| DEFENDANT: | **Yes.** |
| THE COURT: | **So right now you understand everything that's been said and done so far today?** |
| DEFENDANT: | **Yes.** |
| THE COURT: | **And right now there are no mental health conditions that would prevent you from continuing with this plea?** |
| DEFENDANT: | **No.** |
| THE COURT: | Okay. **And are you satisfied with the representation of your lawyer up to this point?** |
| DEFENDANT: | **Yes.** |

(N.T. 11/3/15, p. 5-9) (emphasis added). Defendant has failed to meet his burden as proof as he

has failed to provide any evidence that did not know what he was doing. The record is clear that

Defendant understood the nature of the charges against him; therefore, the voluntariness of the

17

plea has been established. There is nothing in the record that indicates that Defendant was confused, disoriented, incoherent or in any way disconnected from reality. To the contrary, Defendant appropriately engaged with the Court, answered questions in a lucid, coherent manner, and informed the Court that he was present to plead guilty to third degree murder. As stated above, a defendant is bound by the statements he makes during his guilty plea colloquy and may not assert grounds for withdrawing the plea that contradict statements that he made. McCauley, *supra*. There is no requirement that Defendant be pleased with the outcome of his decision to plead guilty, "[a]ll that is required is that [his] decision to plead guilty be knowingly, voluntarily and intelligently made." Reid, *supra*. Accordingly, this Court's decision to deny Defendant's motion to withdraw guilty plea should be affirmed.

With respect to the Memorandum of Agreement, at the hearing regarding Defendant's motion to withdraw guilty plea, testimony from Assistant District Attorney Zarallo and Mr. Desiderio refuted Defendant's claim that no one ever explained the agreement to him and that he had no idea that he would be testifying against his co-conspirators. Their testimony shows that Defendant spent approximately 4 ½ hours at the District Attorney's Office with Mr. Desiderio, at which time they negotiated the agreement. Mr. Desiderio testified that he read aloud and explained each component of the agreement to Defendant in common parlance and answered any questions he had. Mr. Zarallo testified that he left Defendant and Mr. Desiderio alone in a room for nearly 45 minutes so they could review the agreement and then make any suggestions for changes that needed to be made. A review of the Memorandum of Agreement itself shows that it includes a provision that Defendant was expected to "testify truthfully and completely before any Grand Jury and at any hearing or trial in any case in which the District Attorney requests him to testify." Memorandum of Agreement, signed by Defendant on 11/2/15. Three days later,

18

Defendant returned to the District Attorney's Office to prepare for trial. Desiderio testified that Defendant called him during that meeting to discuss his apprehensions regarding testifying against his friends, thus showing that Defendant knew and understood that he would be testifying as part of his Memorandum of Agreement. Thus, the record more than sufficiently demonstrates that Defendant knowingly, intelligently and voluntarily pled guilty to third degree murder. There is nothing to support his claim that any mental illness or failure to take his medication in any way affected his ability to comprehend the details of the Memorandum of Agreement or the guilty plea. In addition, there is no evidence that Mr. Desiderio failed to explain the agreement and guilty plea to Defendant. Accordingly, this Court's judgment of sentence should be affirmed.

Even if Defendant could demonstrate a fair and just reason for withdrawing his guilty plea, which he cannot, allowing him to do so would cause the Commonwealth to suffer substantial prejudice. The Commonwealth simply would not be put back into the same position it would have been prior to Defendant's guilty plea, as Defendant was aware already of the Commonwealth's evidence, trial strategy, and knew the outcome of Hutchins' and Johnson's trial. By changing his mind regarding his guilty plea only after he had assisted the Commonwealth prepare for trial, Defendant had a full preview of the Commonwealth's evidence before deciding his own trial strategy. Defendant had provided evidentiary details to the Commonwealth, including adding details to the crime scene map used at Hutchins' and Johnson's trial. Furthermore, Defendant participated as a witness at Hutchins' and Johnson's trial and knew that the outcome of their trial was a verdict of not guilty on all charges. With all of this additional information, Defendant regretted his decision to plead guilty. He wanted to go to trial since he knew his co-conspirators had received a favorable outcome, in large part, due to his decision to "go south" and deny that Hutchins and Johnson were involved at all in the shooting

19

death of the victim. Thus, Defendant's desire to withdraw his guilty plea was simply an attempt to manipulate the system. Allowing Defendant to withdraw his plea would be unfair to the Commonwealth and would substantially impair their ability to fairly prosecute Defendant. Therefore, this Court properly denied Defendant's motion to withdraw his guilty plea and this decision should not be disturbed on appeal.

## CONCLUSION

After review of the applicable statutes, testimony, and case law, this Court committed no error. This Court properly denied Defendant's motion to withdraw guilty plea. Accordingly, this Court's judgment of sentence should be affirmed.

BY THE COURT:

_____ J.

21