J-A13015-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUBRIL IVY | : | |
| | : | |
| Appellant | : | No. 246 EDA 2020 |

Appeal from the Judgment of Sentence Entered November 8, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003017-2018,
CP-51-CR-0003018-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUBRIL IVY | : | |
| | : | |
| Appellant | : | No. 247 EDA 2020 |

Appeal from the Judgment of Sentence Entered November 8, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003017-2018,
CP-51-CR-0003018-2018

BEFORE: BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED: JUNE 7, 2021**

Appellant, Jubril Ivy, appeals from the aggregate judgment of sentence of 5 to 10 years' incarceration, imposed after he pled guilty to possession with intent to deliver a controlled substance (PWID) and possession of a controlled

_____

[*] Former Justice specially assigned to the Superior Court.

substance in the case docketed at CP-51-CR-0003017-2018,[1] and to aggravated assault, simple assault, recklessly endangering another person (REAP), and terroristic threats in the case docketed at CP-51-CR-0003018-2018.[2,3] On appeal, Appellant claims that the trial court erred by denying his pre-sentence motion to withdraw his guilty plea. After careful review, we affirm.

The trial court summarized the facts and complicated procedural history of Appellant's case, as follows:

> Both above-captioned matters stem from Appellant's arrest on February 23, 2018, for physically assaulting a uniformed Philadelphia police officer during the lawful arrest of Appellant for possession with the intent to distribute illegal narcotics including crack cocaine, heroin, and oxycodone. Following [a] preliminary hearing[,] … arraignments[,] and joinder, the charges related to the assault of the police officer as the named victim were docketed by the First Judicial District of Pennsylvania Court of Common Pleas under CP-51-CR-0003018-2018; the charges related to Appellant's violations of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P[.]S. § 780-113 *et seq.* were docketed under CP-51-CR-0003017-2018.
>
> The facts fully admitted by Appellant when recited by the assigned prosecutor at Appellant's first guilty plea hearing conducted on March 19, 2019, were as follows:
>
> > MS. GORDON: "On February 23, 2018, at 10:30 a.m. Officers Lally and McCullough were on duty. They observed a black Buick with tinted windows. They activated their

---

[1] 35 P.S. §§ 35-780(a)(30) and (a)(16), respectively.

[2] 18 Pa.C.S. §§ 2702(a), 2701(a), 2705, and 2706(a)(1), respectively.

[3] This Court *sua sponte* consolidated Appellant's appeals by *per curiam* order entered March 16, 2020.

lights and stopped the car. They approached the driver's side. [Appellant] was the operator of the vehicle.

As they were speaking to him, they observed a green substance hanging out of his jacket pocket. [Appellant] exited the vehicle. At that point, the officer conducted a pat down and felt what he believed to be narcotics. At this point, [Appellant] began struggling and fighting with Officer Lally, striking him with [his] hands and feet…[.] At some point during the struggle[, he] reached into his pants pocket and pulled out a plastic packet, containing a white substance. He then swallowed [the substance], stating, "They are gone."

The officer, of course, tried to recover the narcotics before [Appellant] could ingest them, struggling with [Appellant] to keep him from swallowing the narcotics. During this, the officer struck [Appellant] in his face and body to prevent him from continuing to swallow the narcotics and then made an arrest…[.]

They recovered thirty-two red and seventy-four blue tinted packets of crack cocaine[,] … nine packets of heroine, and … four pills of Oxycodone.

[Appellant] was irate throughout this encounter and continued to struggle, including hitting his head against the patrol door. [Appellant] threatened the officer, stating, "Take these handcuffs off. I will beat the shit out of you…[."]

[] The Commonwealth would also present expert testimony regarding the quantity of the narcotics and indicating possession with the intent to deliver. They also recovered $3,065.00 from [Appellant]…[.]

[]*See* Notes of Testimony [(N.T.)], [3/19/19, at] … 7-8[].

After various defense-initiated delays, the above consolidated matters were transferred to [c]ourtroom 1002 before this [c]ourt as the presiding jurist for disposition. A scheduling conference was immediately held on August 3, 2018, during which a jury trial date was requested by the defense. All counsel had been … ready for the jury trial scheduled to begin on December 3, 2018. On November 28, 2018, less than a week prior to the trial date, privately retained defense counsel, Robert Gamburg, Jr., Esquire,

requested a trial continuance, citing an unavailable defense witness and need for further investigation. The defense request was granted and the new jury trial date was scheduled for March 25, 2019.

On March 13, 2019, approximately two weeks prior to the jury trial date, Appellant again appeared before this [c]ourt for a hearing that had been initiated by defense counsel's motion to be removed as attorney of record. During the ensuing discussion and colloquy, both Appellant and his attorney demonstrated a mending of minds and desire to withdraw the removal request. Appellant apologized for his obstructionist behavior and announced his complete satisfaction with his retained and very experienced lawyer, Robert Gamburg, Jr., Esquire.

To ensure complete cognizance and voluntariness of choice, at the March 13th hearing, this [c]ourt conducted a thorough verbal colloquy of Appellant. This [c]ourt informed Appellant, in detail, of all rights and options, the nature of the pending charges, the length of the maximum possible sentences, as well as the differences between a waiver and jury trial. In response, Appellant verbally expressed his solid understanding of those rights, charges, maximum penalties, and available choices. []N.T.[,] 3/13/[]19, [at] 6-13[].

During that same hearing, defense counsel additionally raised Appellant's belated desire to avoid going to a jury trial with this [c]ourt as the presiding jurist by requesting permission to enter guilty pleas to the subject offenses before the Honorable Frank Palumbo, Judge of the First Judicial District of Pennsylvania Court of Common Pleas via P[ennsylvania] Rule of Criminal Procedure 701.

The instant offenses had occurred during those probationary periods supervised by the Philadelphia Adult Probation and Parole Department following conviction and imposed Orders and Judgments of Sentence in case docketed under CP-51-CR-0001626-2012. Judge Palumbo had been previously assigned as the governing jurist of Appellant's probation and parole periods under that docketed case.[4]

_____

[4] Thus, Appellant was facing a violation of probation (VOP) charge based on his commission of the crimes in the present cases.

- 4 -

Although this request appeared to be a thinly disguised[,] last-ditch effort to forum shop, and despite the fact that Appellant had waived this alternate disposition opportunity by waiting over a year after his arrest, this [c]ourt agreed to permit him to plead guilty in both cases before Judge Palumbo via Rule 701. This permission was expressly conditioned upon the … execution of the guilty pleas before the set trial date of March 25, 2019[,] to avoid ensuing delay. []*Id.* at 13[]. The following day, on March 14, 2019, defense counsel formally filed Appellant's request that both cases be administratively relisted in front of Judge Palumbo for entry of guilty pleas. That formal request was granted and both above-captioned cases were listed for entry of guilty pleas before Appellant's chosen jurist on March 19, 2019.

On March 19, 2019, Appellant tendered an open or non-negotiated guilty plea to all charges before Judge Palumbo, including both drug offenses, the felony[-]graded [PWID offense] and the lesser graded [p]ossession of a [c]ontrolled [s]ubstance [charge,] docketed under CP-51-CR-0003017-2018, and the felony[-]graded offense of [a]ggravated [a]ssault, and the misdemeanor charges of [s]imple [a]ssault, [REAP], and [t]erroristic [t]hreats[,] docketed under CP-51-CR-0003018-2018.

On March 19, 2019, following Appellant's counselled proffer of the fully executed written guilty plea colloquy forms, Judge Palumbo conducted another recorded[,] full verbal colloquy of Appellant six (6) days after this [c]ourt had similarly addressed Appellant's rights and responsibilities. During this colloquy, Appellant unequivocally accepted responsibility for his criminal conduct by readily admitting to the facts as recited by the prosecutor on the record. Appellant also acknowledged verbally and in writing that no promises had been made to him regarding future sentences. [*Id.* at 7-8[]. The proffered guilty pleas were accepted by Judge Palumbo as knowingly, intentionally, and voluntarily tendered.

The sentencing for these cases and others, were deferred for full hearing on May 30, 2019[,] pending completion of the ordered mental health evaluations and presentence investigative [(PSI)] reports. Appellant[,] through his counsel, also announced his future desire to tender to Judge Palumbo an additional guilty plea to unrelated [driving under the influence (DUI)] charges that had also been awaiting disposition in the First Judicial District of Pennsylvania Municipal Court docketed under MC-51-CR-0000773-2019. [*Id.* at] 7-14[].

Subsequently, at the request of defense counsel on behalf of Appellant, and without objection from the Commonwealth's attorney, the previously scheduled deferred sentencing hearing was moved forward to May 2, 2019, to facilitate the guilty plea for the case docketed under MC-51-CR-0000773-2019, even though the [PSI] reports had not been completed. On May 2, 2019, Appellant proffered a fully executed written guilty plea colloquy form relative to the case docketed under MC-51-CR-0000773-2019 and another verbal colloquy was conducted. After once again accepting responsibility for the underlying criminal conduct as alleged in all cases, both parties and counsel agreed to proceed immediately to sentencing as to all four cases then listed before Judge Palumbo[,] including the above-captioned matters.

The recorded transcript of the next portion of the May 2nd proceedings reflect[s] a very difficult to decipher … discourse between [Attorney] Gamburg and Judge Palumbo. The prosecutor mercifully recommended the imposition of a concurrently running[,] aggregate sentence of two (2) … to four (4) years of state supervised confinement[,] followed by six (6) months of county supervised probation, for all four cases. That recommendation was for an aggregate[,] concurrently running sentence at the very bottom of any mitigated recommended guideline sentencing range for the main drug dealing charge. Appellant's extensive criminal history, history of failed rehabilitative attempts by the judicial system, and potential danger to the community were cited as supporting [the] recommendation…. Then[,] defense counsel heatedly debated with Judge Palumbo that the Commonwealth's request had been unreasonable. He argued for a concurrently running[,] aggregate sentence for all cases of county confinement with immediate parole, with release to the Wedge [Medical Center for] outpatient drug and alcohol treatment…. []N.T.[,] 05/2/[]19[, at] 4-53[.]

The record further reflect[s] that when it became readily apparent from Judge Palumbo's comments that he had been in accord with the Commonwealth's recommendations, defense counsel announced Appellant's desire to withdraw his guilty [plea] and instructed Appellant to voice his change of mind; defense counsel then alleged that Appellant had not been mentally competent to proceed with sentencing. In response, Judge Palumbo agreed that Appellant appeared to be unduly medicated[,] after noting his observations of Appellant's mumbled responses[,] and summarily decided that Appellant did not appear to be mentally competent to proceed to sentencing on May 2, 2019. [**See id.** at 49-50.]

- 6 -

The record [i]s devoid of any further data concerning Appellant's competency.

Thereafter, Appellant's sentencing hearing was deferred until July 16, 2019, until after the completion of the mental health evaluation and [PSI] reports. Additional time had been granted for counsel to confer with his client and to formally file any request to withdraw any of the previously tendered and accepted guilty pleas in each case. No formal motion to withdraw any previously proffered and accepted guilty plea was filed by the defense in the interim.

The mental health evaluations and the [PSI] reports completed in the intervening period each demonstrated that Appellant had possessed sufficient mental acuity and clarity of purpose to proceed. The respective opinions contained within those reports were not contested at the inception of the sentencing hearing. To the contrary, on July 16, 2019, Appellant, still represented by experienced defense counsel, [Attorney] Gamburg, … proceeded with sentencing arguments. On the record during an additional colloquy process, Appellant again formally admitted to committing the underlying facts of the instant cases as recited by the prosecution's counsel without any hesitation or demonstration of any mental health deficiencies. []N.T.[,] 7/16/19[, at] 7-12[.]

Thereafter, the transcribed record for the sentencing hearing conducted on July 16, 2019, reflected a renewed[,] incomprehensible debate between [Attorney] Gamburg and Judge Palumbo after the Commonwealth's attorney repeated her recommendations for a minimal[,] concurrently running state[-] supervised sentence. Initially, [Attorney] Gamburg once again argued for a short county sentence that envisioned Appellant's immediate parole and release to an out-patient Wedge program[,] and presented testimony from Appellant's friends and family members. Appellant's criminal history[,] that had included both a juvenile adjudication and adult convictions, repeated violations of probationary [and] parole conditions, failed rehabilitative treatment attempts, and the still open case in Lycoming County[,] … was discussed. Once again[,] when it became apparent that Judge Palumbo had intended to order a relatively short state supervised confinement sentence, the dialogue between defense counsel and Judge Palumbo descended into an abyss of imprudent quarrel.

- 7 -

The conclusion of this debate was Judge Palumbo's stated offer to recuse himself from sentencing, even though the record is devoid of any supporting reasoning for that recusal. This "recusal" offer was contextually coupled with the "be careful of what you seek" type of reminder that he was a jurist known for merciful sentencing habits. Defense counsel responded … that the Honorable Frank Palumbo [should] recuse himself as the presiding jurist.

The transcribed record for the recusal request demonstrated the sole motivation for the defense dispute was the expected imposition of the recommended state sentence. Indeed, this is confirmed by [Attorney] Gamburg's final editorial comment: "I'm not sending him upstate." [*Id.* at] 45[.] Judge Palumbo granted the defense request for his recusal and forwarded the two matters docketed under CP-51-CR-0003017-2018 and CP-51-CR-0003018-2018 back to this [c]ourt for disposition without any further ruling or clarification[,] and simultaneously sent the unrelated[,] misdemeanor [DUI] case docketed under MC[-]51-CR-0000773-2019 back to the First Judicial District Municipal Court from whence it came.[2]

> [2] The transcribed record from that hearing was also silent concerning the outcome of the [VOP] hearing in the case for which Judge Palumbo has retained governing probation and parole supervision docketed under CP-51-CR-0001626-2012.

The cases docketed under CP-51-CR-0003017-2018 and CP-51-CR-0003018-2018 were transferred for formal sentencing hearing on the same day, July 18, 2019, before this [c]ourt as the presiding jurist in [c]ourtroom 1002 where they had been originally listed. Upon return to this [c]ourt, Appellant's attorney requested a continuance for further investigation, and to order transcribed notes of testimony from prior hearings and for possible filings of a formal motion to withdraw Appellant's previously accepted guilty pleas.

Given this [c]ourt's lack of direct knowledge of prior events and the factual dispute raised by each counsel, the defense [continuance] request was granted and a motion and/or sentencing hearing date was scheduled for September 5, 2019. In an abundance of caution to avoid future delay if the defense motion to withdraw the guilty pleas would have been granted, an alternate or a back-up jury trial date was preliminarily listed for

- 8 -

December 19, 2019. On September 5, 2019, defense counsel requested another continuance because certain notes of testimony had not been transcribed. The continuance request was again granted and the motions hearing was listed for October 25, 2019 in [c]ourtroom 1002.

On October 25, 2019, the Commonwealth requested a continuance of the motion or sentencing hearing because the assigned Assistant District Attorney was ill. That request was also granted and a new hearing was scheduled for November 8, 2019. Finally, on November 8, 2019, in [c]ourtroom 1002 with this [c]ourt presiding, the defense Motions to Withdraw Guilty Pleas were fully argued. After thorough review and consideration of arguments presented by both attorneys, Appellant's disingenuous sworn testimony, the transcribed records and introduced exhibits from all relevant hearings, as well as the documented procedural history, this [c]ourt denied Appellant's Motions to Withdraw Guilty Pleas in both above-captioned matters. This [c]ourt found that Appellant had indeed entered valid guilty pleas in both cases and had not presented any reasonable justification for withdraw. []N.T.[,] 11/8/[]19[, at] 4-42[.]

Immediately following the motion hearing, both parties, through counsel, responded that they were ready and willing to proceed to sentencing. This [c]ourt incorporated assessment of the previously completed pre-sentence investigative reports and the mental health evaluations in advance of the hearing. Testimony from Appellant's mother, Charmaine Ivy, his twin sister, Shira Ivy, and again from Appellant himself, was presented. Both attorneys offered sentencing points of view. [*Id.* at] 43-60[].

Trial Court Opinion (TCO), 6/25/20, at 1-9 (one footnote, some citations to the record, and emphasis omitted).

At the close of Appellant's sentencing hearing, the court imposed an aggregate term of 5 to 10 years' incarceration. Appellant filed a timely post-sentence motion, which was denied. He then filed a timely notice of appeal in

each of his two cases.[5]   Appellant complied with the trial court's order to file

a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.   The

court filed its Rule 1925(a) opinion on June 25, 2020.   Herein, Appellant states

two issues for our review:

> 1. [Appellant] pleaded guilty to various offenses under a consolidated [Pa.R.Crim.P.] 701 plea.   The trial court then sentenced [Appellant] based only on some of the offenses, while the others proceeded to trial.   Did the trial court err by finding that [Appellant] could be sentenced for only some of the offenses subject to the prior Rule 701 plea?
>
> 2. [Appellant] had recognized medical issues affecting his mental competence during plea proceedings, after which he asserted his innocence before sentencing.   Did the trial court err by denying his motion to withdraw any guilty plea?

---

[5] We note that each of Appellant's notices of appeal listed the docket numbers of both of his two cases.   On February 16, 2020, our Court issued a rule to show cause why Appellant's appeals should not be quashed under Pa.R.A.P. 341 and **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018) (holding that "the proper practice under Rule 341(a) is to file separate appeals from an order that resolves issues arising on more than one docket.  The failure to do so requires the appellate court to quash the appeal").   Appellant responded, claiming that he had complied with Rule 341 and **Walker** because he had "in fact filed two separate notices of appeal to challenge his two judgments of sentence."  Response to Rule to Show Cause, 2/26/20, at 1 (single page).   On February 28, 2020, our Court discharged the rule to show cause and deferred the issue to the present panel.  We conclude that Appellant's appeals need not be quashed.   Appellant filed a separate notice of appeal at each docket number.   Therefore, although he included both case numbers on each notice of appeal, he complied with Rule 341 and **Walker**.   **See Commonwealth v. Johnson**, 236 A.3d 1141, 1148 (Pa. Super. 2020) ("Based on our review of **Walker** and Rule 341, Johnson filed separate notices that perfected four appeals from each of the four common pleas court dockets.  The fact that the notices contained all four lower court numbers is of no consequence.  Indeed, the Rules of Appellate Procedure are to be liberally construed to effectuate justice.") (citations omitted), *appeal denied*, 242 A.3d 304 (Pa. 2020).

Appellant's Brief at 4.

Both of Appellant's issues challenge the trial court's denial of his presentence motion to withdraw his guilty pleas. This Court has explained:

> We review a trial court's ruling on a presentence motion to withdraw a guilty plea for an abuse of discretion. **Commonwealth v. Elia**, 83 A.3d 254, 261 (Pa. Super. 2013).
>
> Pennsylvania Rule of Criminal Procedure 591(A) provides:
>
> > At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty.
>
> Pa.R.Crim.P. 591(A). The official comment to Rule 591 provides: "After the attorney for the Commonwealth has had an opportunity to respond, a request to withdraw a plea made before sentencing should be liberally allowed." **Id.** cmt. Similarly, in **Commonwealth v. Forbes**, the Pennsylvania Supreme Court concluded: "Although there is no absolute right to withdraw a guilty plea, properly received by the trial court, it is clear that a request made *before* sentencing ... should be liberally allowed." … 299 A.2d 268, 271 ([Pa.] 1973) (emphasis in original). The Court in **Forbes** went on to explain:
>
> > [I]n determining whether to grant a presentence motion for withdrawal of a guilty plea, the test to be applied by the trial courts is fairness and justice. If the trial court finds "any fair and just reason", withdrawal of the plea before sentence should be freely permitted, unless the prosecution has been "substantially prejudiced."
>
> **Id.** (internal citations and some internal quotations omitted); **see also Commonwealth v. Prendes**, 97 A.3d 337, 351–52 (Pa. Super. 2014). In **Elia**, this Court explained the rationale for the rule of liberal allowance of withdrawal of guilty pleas before sentencing:
>
> > The policy underlying this liberal exercise of discretion is well-established: The trial courts in exercising their discretion must recognize that before judgment, the courts should show solicitude for a defendant who wishes to undo

- 11 -

> a waiver of all constitutional rights that surround the right to trial—perhaps the most devastating waiver possible under our constitution.
>
> 83 A.2d at 262 (quoting *Commonwealth v. Santos*, … 301 A.2d 829, 830 ([Pa.] 1973)) (internal citation and quotations omitted).

*Commonwealth v. Islas*, 156 A.3d 1185, 1187–88 (Pa. Super. 2017).

In Appellant's first issue, he argues that the trial court erred by denying his motion to withdraw his guilty pleas because he did not receive the benefit of his bargain. Specifically, Appellant claims that "the deal was that [he] would plead guilty to all pending charges" and "[a]ll of his cases would be resolved in a single sentencing proceeding" pursuant to Rule 701. Appellant's Brief at 22. That rule states:

> (A) Before the imposition of sentence, the defendant may plead guilty to other offenses that the defendant committed within the jurisdiction of the sentencing court.
>
> (B) When such pleas are accepted, the court shall sentence the defendant for all the offenses.

Pa.R.Crim.P. 701.

According to Appellant, "[t]he only consideration that he would receive for his guilty plea – giving up his fundamental[,] constitutional right to trial by jury – was [a] consolidated sentencing." Appellant's Brief at 22. He claims that he "never got the benefit of [a] consolidated sentencing" because Judge Palumbo recused himself and his cases were split up, with his present cases proceeding to sentencing before a different judge, his DUI charge going to trial, and his VOP charge remaining pending. Appellant insists that this

- 12 -

outcome demonstrates that he "did not receive the negotiated consideration for pleading guilty, [and] he cannot be held to his plea." *Id.*

Appellant also argues that he should have been permitted to withdraw his plea because the parties had a "shared misunderstanding" that his plea would result in a consolidated sentencing, which never occurred. Alternatively, he posits that we should consider his plea as having been essentially rejected by Judge Palumbo. He explains: "Through the effect of Judge Palumbo's recusal and the subsequent splitting up of [Appellant's] case, the trial court never accepted [Appellant's] consolidated Rule 701 plea by resolving all of the offenses in a consolidated proceeding. If the trial court does not accept the plea, it 'is of no moment.'" *Id.* at 23 (quoting ***Commonwealth v. Chazin***, 873 A.2d 732, 737 (Pa. Super. 2005)). For all of these reasons, Appellant concludes that the trial court erred by denying his motion to withdraw his guilty pleas in the present cases.

We are unconvinced. First, Rule 701 was not violated by the fact that Appellant's sentencing was not consolidated, as he never entered guilty pleas to all the charges on which he wished to be sentenced. After Judge Palumbo accepted Appellant's guilty pleas in the instant cases, the judge gave Appellant the opportunity to plead guilty to his DUI charge and proceed to sentencing on all his offenses together. However, Appellant ultimately did not enter a valid plea to DUI, and his VOP allegation remained outstanding, because Appellant expressed his desire to withdraw his pleas after discovering that Judge Palumbo intended to impose a sentence higher than he wished.

Ultimately, Appellant was deemed incompetent at the May 2, 2019 hearing, and then, at the July 16, 2019 hearing, he accepted Judge Palumbo's offer to recuse after another heated discussion about the judge's sentencing decision. Due to Appellant's conduct and incompetence, his pleas were not **all** accepted and, thus, the consolidated sentencing provision of Rule 701(B) was not triggered. **See** Pa.R.Crim.P. 701(B) ("**When such pleas are accepted**, the court shall sentence the defendant for all the offenses.") (emphasis added).

The fact that Appellant was not sentenced for all of his crimes together under the rule did not invalidate his otherwise lawful plea. Appellant concedes his guilty pleas in the present cases were knowing, intelligent, and voluntary, **see** Appellant's Reply Brief at 1. Nothing in Rule 701 creates a right to withdraw a guilty plea that was knowingly, voluntarily, and intelligently entered. Instead, "[t]he objective of this rule is to enable the court to sentence the defendant on all outstanding charges within the jurisdiction of the sentencing court at one time." Pa.R.Crim.P. 701 cmt. Here, the court provided Appellant the chance to have his charges be joined for sentencing, but that did not occur because of Appellant's conduct.

We also deem meritless Appellant's arguments that he did not receive the benefit of the bargain, that there was a "shared misunderstanding" between the parties, or that Judge Palumbo effectively rejected his guilty pleas in the instant cases. As the Commonwealth convincingly posits:

> [E]ven assuming that part of the bargain for [Appellant] was
> receiving a consolidated sentencing on the instant case and his
> VOP on his [prior] case before Judge Palumbo, he cannot avoid

the entire plea because he **had** the opportunity to have all of his open matters resolved before a single judge, and **he** prevented it from happening. Plea agreements are "contractual in nature and [are] to be analyzed under contract law standards." **Commonwealth v. Kroh**, 654 A.2d 1168, 1172 (Pa. Super. 1995). A party who frustrates the occurrence of a contractual condition is precluded from using the failure of the condition to avoid the agreement—he cannot terminate the contract for nonperformance nor is he relieved of his obligation to perform under the contract. **Borough of Nanty-Glo v. Am. Surety Co. of N.Y.**, 175 A. 536, 537 (Pa. 1934); **Taub v. Cedarbrook Joint Venture**, 404 A.2d 403, 406 (Pa. Super. 1978)….

To the extent that a consolidated sentencing was a condition of [Appellant's] plea, [Appellant] frustrated it from occurring[] and[,] therefore[, he] cannot use the fact that he did not receive the consolidated sentencing to avoid his plea.

This is not an instance of "shared misunderstanding," as [Appellant] contends. Both parties understood and agreed that [Appellant] could plead guilty and be sentenced in consolidated proceedings before Judge Palumbo. He would have been sentenced in that way had he not prevented his sentencing from being completed before Judge Palumbo.

Nor did Judge Palumbo "reject" [Appellant's] plea. Judge Palumbo accepted his open plea and deferred sentencing for preparation of a [pre-sentence investigation report] and mental health evaluation. At that point, [Appellant] had pled guilty and the only matter outstanding was imposition of a sentence.

In short, even if being sentenced on all of his open mat[t]ers [was] somehow a condition of [Appellant's] guilty plea, he received the benefit of that condition. The only reason that consolidated sentencing did not occur was [Appellant's] own actions. His guilty plea was knowing, voluntary, and intelligent, and the court did not abuse its discretion in denying his motion to withdraw his plea.

**Id.** at 26-27 (emphasis in original).

We agree with the Commonwealth. In accordance with Rule 701, Appellant was provided the opportunity to plead guilty to all of his charges and be sentenced on them together. However, when he realized that the court

intended to impose a state sentence, Appellant moved to withdraw his plea, claimed incompetence, and then sought the court's recusal, thus preventing the consolidated sentencing proceeding from occurring. We refuse to adopt an interpretation or application of Rule 701 that would permit Appellant to utilize his admittedly voluntary and knowing guilty pleas as a sentence-testing device. His first claim warrants no relief.

Next, Appellant argues that the trial court should have granted his motion to withdraw his pleas because "[t]he combination of an assertion of innocence[,] together with serious mental-health issues to explain [his] prior acknowledgements of guilt[, was] sufficient to allow withdrawal." Appellant's Brief at 19. Appellant also contends that the Commonwealth would not have been prejudiced if he withdrew his pleas.

In assessing Appellant's claim, we have reviewed the briefs of the parties, the certified record, and the applicable law. We have also considered the well-reasoned decision of the Honorable Ann Marie B. Coyle of the Court of Common Pleas of Philadelphia County. *See* TCO at 17-25. We conclude that Judge Coyle's thorough analysis correctly disposes of the arguments presented by Appellant, and demonstrates that Judge Coyle did not abuse her discretion in denying Appellant's motion to withdraw his guilty pleas. Thus, we adopt that portion of Judge Coyle's decision as our own in rejecting Appellant's second issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/21

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) | NO. CP-51-CR-0003017-2018 |
| | ) | |
| | ) | SUPERIOR COURT |
| VS. | ) | NO. 246 EDA 2020 |
| | ) | |
| | ) | |
| JUBRIL IVY | ) | NO. CP-51-CR-0003018-2018 |
| | ) | |
| | ) | SUPERIOR COURT |
| | ) | NO. 247 EDA 2020 |

OPINION

Jubril Ivy, the above-named Defendant/Appellant, seeks review of the Order Denying his Motion to Withdraw Guilty Plea and the Orders and Judgements of Sentence imposed on November 8, 2019 by the Honorable Anne Marie Coyle, Judge of the Court of Common Pleas for the First Judicial District, Criminal Division hereinafter referred to as "this Court." Pursuant to Pa.R.A.P. §1925(b), within his Statement of Matters Complained of on Appeal, Appellant claimed that this Court had erred in factually finding that Appellant had entered a guilty plea before the prior jurist. Appellant also averred that this Court should have allowed him to withdraw his guilty pleas entered before sentencing. A full and fair review of the record and all evidence entered on the record, reflects that both claims lacked factual and legal merit. Accordingly, the Orders and Judgments of Sentence should be affirmed.

## I.  **FACTUAL AND PROCEDURAL HISTORY**

Both above-captioned matters stem from Appellant's arrest on February 23, 2018, for physically assaulting a uniformed Philadelphia police officer during the lawful arrest of Appellant for possession with the intent to distribute illegal narcotics including crack cocaine, heroin, and

-1-

oxycodone. Following preliminary hearing and arraignments and joinder, the charges related to the assault of the police officer as the named victim were docketed by the First Judicial District of Pennsylvania Court of Common Pleas under *CP-51-CR-0003018-2018*; the charges related to Appellant's violations of the Controlled Substance, Drug, Device and Cosmetic Act, 35 Pa. C.S. § 780-113 *et seq.* were docketed under *CP-51-CR-0003017-2018.*

The facts fully admitted by Appellant when recited by the assigned prosecutor at Appellant's first guilty plea hearing conducted on March 19, 2019, were as follows:

> **MS. GORDON:** "On February 23, 2018, at 10:30 a.m. Officers Lally and McCullough were on duty. They observed a black Buick with tinted windows. They activated their lights and stopped the car. They approached the driver's side. This defendant was the operator of the vehicle.
>
> As they were speaking to him, they observed a green substance hanging out of his jacket pocket. The defendant exited the vehicle. At that point, the officer conducted a pat down and felt what he believed to be narcotics. At this point, the defendant began struggling and fighting with Officer Lally, striking him with hands and feet... At some point during the struggle reached into his pants pocket and pulled out a plastic packet, containing a white substance. He then swallowed them, stating, "They are gone."
>
> The officer, of course, tried to recover the narcotics before the defendant could ingest them, struggling with the defendant to keep him from swallowing the narcotics. During this, the officer struck the offender in his face and body to prevent him from continuing to swallow the narcotics and then made an arrest....
>
> They recovered thirty-two red and seventy-four blue tinted packets of crack cocaine... nine packets of heroine, and...four pills of Oxycodone.
>
> The defendant was irate throughout this encounter and continued to struggle, including hitting his head against the patrol door. The defendant threatened the officer, stating, "Take these handcuffs off. I will beat the shit out of you...
>
> ...The Commonwealth would also present expert testimony regarding the quantity of the narcotics and indicating possession with the intent to deliver. They also recovered $3,065.00 from Mr. Ivy..."

(See Notes of Testimony, March 19, 2019 pages 7-8). [1]

After various defense-initiated delays, the above consolidated matters were transferred to Courtroom 1002 before this Court as the presiding jurist for disposition. A scheduling conference was immediately held on August 3, 2018, during which a jury trial date was requested by the defense. All counsel had been attached to appear, ready for the jury trial scheduled to begin on December 3, 2018. On November 28, 2018, less than a week prior to the trial date, privately retained defense counsel, Robert Gamburg, Jr., Esquire, requested a trial continuance, citing an unavailable defense witness and need for further investigation. The defense request was granted and the new jury trial date was scheduled for March 25, 2019.

On March 13, 2019, approximately two weeks prior to the jury trial date, Appellant again appeared before this Court for a hearing that had been initiated by defense counsel's motion to be removed as attorney of record. During the ensuing discussion and colloquy, both Appellant and his attorney demonstrated a mending of minds and desire to withdraw the removal request. Appellant apologized for his obstructionist behavior and announced his complete satisfaction with his retained and very experienced lawyer, Robert Gamburg, Jr., Esquire.

To ensure complete cognizance and voluntariness of choice, at the March 13th hearing, this Court conducted a thorough verbal colloquy of Appellant. This Court informed Appellant, in detail, of all rights and options, the nature of the pending charges, the length of the maximum possible sentences, as well as the differences between a waiver and jury trial. In response, Appellant verbally expressed his solid understanding of those rights, charges, maximum penalties, and available choices. (N.T. 3/13/2019, pp. 6-13).

---

[1] The set of facts to which Appellant had readily admitted, were reiterated and supplemented by the same assigned prosecutor at the subsequent hearing held on July 16, 2019, to reflect injury to the victim as a result of Appellant's repeated striking and kicking. (N.T. 07/16/2019 pp. 7-12.)

-3-

During that same hearing, defense counsel additionally raised Appellant's belated desire to avoid going to a jury trial with this Court as the presiding jurist by requesting permission to enter guilty pleas to the subject offenses before the Honorable Frank Palumbo, Judge of the First Judicial District of Pennsylvania Court of Common Pleas via Pa. Rule of Criminal Procedure 701. The instant offenses had occurred during those probationary periods supervised by the Philadelphia Adult Probation and Parole Department following conviction and imposed Orders and Judgments of Sentence in case docketed under *CP-51-CR-0001626-2012*. Judge Palumbo had been previously assigned as the governing jurist of Appellant's probation and parole periods under that docketed case.

Although this request appeared to be a thinly disguised last-ditch effort to forum shop, and despite the fact that Appellant had waived this alternate disposition opportunity by waiting over a year after his arrest, this Court agreed to permit him to plead guilty in both cases before Judge Palumbo via Rule 701. This permission was expressly conditioned upon the filing of and execution of the guilty pleas before the set trial date of March 25, 2019 to avoid ensuing delay. (Id. at 13). The following day, on March 14, 2019, defense counsel formally filed Appellant's request that both cases be administratively relisted in front of Judge Palumbo for entry of guilty pleas. That formal request was granted and both above-captioned cases were listed for entry of guilty pleas before Appellant's chosen jurist on March 19, 2019.

On March 19, 2019, Appellant tendered an open or non-negotiated guilty plea to all charges before Judge Palumbo, including both drug offenses, the felony graded Possession with Intent to Deliver Controlled Substances and the lesser graded Possession of a Controlled Substance docketed under *CP-51-CR-0003017-2018*, and the felony graded offense of Aggravated Assault,

-4-

and the misdemeanor charges of Simple Assault, Recklessly Endangering Another Person, and Terroristic Threats docketed under *CP-51-CR-0003018-2018.*

On March 19, 2019, following Appellant's counselled proffer of the fully executed written guilty plea colloquy forms, Judge Palumbo conducted another recorded full verbal colloquy of Appellant six (6) days after this Court had similarly addressed Appellant's rights and responsibilities. During this colloquy, Appellant unequivocally accepted responsibility for his criminal conduct by readily admitting to the facts as recited by the prosecutor on the record. Appellant also acknowledged verbally and in writing that no promises had been made to him regarding future sentences. (N.T. 3/19/19, pp. 7-8). The proffered guilty pleas were accepted by Judge Palumbo as knowingly, intentionally, and voluntarily tendered.

The sentencing for these cases and others, were deferred for full hearing on May 30, 2019 pending completion of the ordered mental health evaluations and presentence investigative reports. Appellant through his counsel, also announced his future desire to tender to Judge Palumbo an additional guilty plea to unrelated "DUI" charges that had also been awaiting disposition in the First Judicial District of Pennsylvania Municipal Court docketed under *MC-51-CR-0000773-2019.* (N.T. 3/19/19, pp.7-14).

Subsequently, at the request of defense counsel on behalf of Appellant, and without objection from the Commonwealth's attorney, the previously scheduled deferred sentencing hearing was moved forward to May 2, 2019, to facilitate the guilty plea for the case docketed under *MC-51-CR-0000773-2019,* even though the presentence reports had not been completed. On May 2, 2019, Appellant proffered a fully executed written guilty plea colloquy form relative to the case docketed under *MC-51-CR-0000773-2019* and another verbal colloquy was conducted. After once again accepting responsibility for the underlying criminal conduct as alleged in all cases, both

-5-

parties and counsel agreed to proceed immediately to sentencing as to all four cases then listed before Judge Palumbo including the above-captioned matters.

The recorded transcript of the next portion of the May 2nd proceedings reflected a very difficult to decipher ensuing discourse between Mr. Gamburg and Judge Palumbo. The prosecutor mercifully recommended the imposition of a concurrently running aggregate sentence of two (2) years to four (4) years of state supervised confinement followed by six (6) months of county supervised probation, for all four cases. That recommendation was for an aggregate concurrently running sentence at the very bottom of any mitigated recommended guideline sentencing range for the main drug dealing charge. Appellant's extensive criminal history, history of failed rehabilitative attempts by the judicial system, and potential danger to the community were cited as supporting recommendation reasoning. Then defense counsel heatedly debated with Judge Palumbo that the Commonwealth's request had been unreasonable. He argued for a concurrently running aggregate sentence for all cases of county confinement with immediate parole, with release to the Wedge outpatient drug and alcohol treatment center. (N.T. 05/2/2019 pp. 4-53)

The record further reflected that when it became readily apparent from Judge Palumbo's comments that he had been in accord with the Commonwealth's recommendations, defense counsel announced Appellant's desire to withdraw his guilty and instructed Appellant to voice his change of mind; defense counsel then alleged that Appellant had not been mentally competent to proceed with sentencing. In response, Judge Palumbo agreed that Appellant appeared to be unduly medicated after noting his observations of Appellant's mumbled responses and summarily decided that Appellant did not appear to be mentally competent to proceed to sentencing on May 2, 2019. The record was devoid of any further data concerning Appellant's competency.

-6-

Thereafter, Appellant's sentencing hearing was deferred until July 16, 2019, until after the completion of the mental health evaluation and presentence investigative reports. Additional time had been granted for counsel to confer with his client and to formally file any request to withdraw any of the previously tendered and accepted guilty pleas in each case. No formal motion to withdraw any previously proffered and accepted guilty plea was filed by the defense in the interim.

The mental health evaluations and the investigative presentence reports completed in the intervening period each demonstrated that Appellant had possessed sufficient mental acuity and clarity of purpose to proceed. The respective opinions contained within those reports were not contested at the inception of the sentencing hearing. To the contrary, on July 16, 2019, Appellant, still represented by experienced defense counsel, Robert Gamburg, Jr., Esquire in all matters, proceeded with sentencing arguments. On the record during an additional colloquy process, Appellant again formally admitted to committing the underlying facts of the instant cases as recited by the prosecution's counsel without any hesitation or demonstration of any mental health deficiencies. (N.T. 7/16/19 pp.7-12)

Thereafter, the transcribed record for the sentencing hearing conducted on July 16, 2019, reflected a renewed incomprehensible debate between Mr. Gamburg and Judge Palumbo after the Commonwealth's attorney repeated her recommendations for a minimal concurrently running state supervised sentence. Initially, Mr. Gamburg once again argued for a short county sentence that envisioned Appellant's immediate parole and release to an out-patient Wedge program and presented testimony from Appellant's friends and family members. Appellant's criminal history that had included both a juvenile adjudication and adult convictions, repeated violations of probationary or parole conditions, failed rehabilitative treatment attempts, and the still open case in Lycoming County Pennsylvania was discussed. Once again when it became apparent that Judge

-7-

Palumbo had intended to order a relatively short state supervised confinement sentence, the dialogue between defense counsel and Judge Palumbo descended into an abyss of imprudent quarrel.

The conclusion of this debate was Judge Palumbo's stated offer to recuse himself from sentencing, even though the record is devoid of any supporting reasoning for that recusal. This "recusal" offer was contextually coupled with the "be careful of what you seek" type of reminder that he was a jurist known for merciful sentencing habits. Defense counsel responded, in a manner reminiscent of someone biting the feeding hand, by requesting that the Honorable Frank Palumbo recuse himself as the presiding jurist.

The transcribed record for the recusal request demonstrated the sole motivation for the defense dispute was the expected imposition of the recommended state sentence. Indeed, this is confirmed by Mr. Gamburg's final editorial comment: "I'm not sending him upstate." (N.T. 07/16/2019 p. 45) Judge Palumbo granted the defense request for his recusal and forwarded the two matters docketed under *CP-51-CR-0003017-2018* and *CP-51-CR-0003018-2018* back to this Court for disposition without any further ruling or clarification and simultaneously sent the unrelated misdemeanor case docketed under *MC#51-CR-0000773-2019* back to the First Judicial District Municipal Court from whence it came.[2] (N.T. 07/16/2019 pp.1-46)

The cases docketed under *CP-51-CR-0003017-2018* and *CP-51-CR-0003018-2018* were transferred for formal sentencing hearing on the same day, July 18, 2019, before this Court as the presiding jurist in Courtroom 1002 where they had been originally listed. Upon return to this Court, Appellant's attorney requested a continuance for further investigation, and to order transcribed

---

[2] The transcribed record from that hearing was also silent concerning the outcome of the revocation hearing in the case for which Judge Palumbo has retained governing probation and parole supervision docketed under *CP-51-CR-0001626-2012*.

-8-

notes of testimony from prior hearings and for possible filings of a formal motion to withdraw Appellant's previously accepted guilty pleas.

Given this Court's lack of direct knowledge of prior events and the factual dispute raised by each counsel, the defense delay request was granted and a motion and/or sentencing hearing date was scheduled for September 5, 2019. In an abundance of caution to avoid future delay if the defense motion to withdraw the guilty pleas would have been granted, an alternate or a back-up jury trial date was preliminarily listed for December 19, 2019. On September 5, 2019, defense counsel requested another continuance because certain notes of testimony had not been transcribed. The continuance request was again granted and the motions' hearing was listed for October 25, 2019 in Courtroom 1002.

On October 25, 2019, the Commonwealth requested a continuance of the motion or sentencing hearing because the assigned Assistant District Attorney was ill. That request was also granted and a new hearing was scheduled for November 8, 2019. Finally, on November 8, 2019, in Courtroom 1002 with this Court presiding, the defense *Motions to Withdraw Guilty Pleas* were fully argued. After thorough review and consideration of arguments presented by both attorneys, Appellant's disingenuous sworn testimony, the transcribed records and introduced exhibits from all relevant hearings, as well as the documented procedural history, this Court denied Appellant's *Motions to Withdraw Guilty Pleas* in both above-captioned matters. This Court found that Appellant had indeed entered valid guilty pleas in both cases and had not presented any reasonable justification for withdraw. (N.T. 11/8/2019 pp. 4-42)

Immediately following the motion hearing, both parties, through counsel, responded that they were ready and willing to proceed to sentencing. This Court incorporated assessment of the previously completed pre-sentence investigative reports and the mental health evaluations in

-9-

advance of the hearing. Testimony from Appellant's mother, Charmaine Ivy, his twin sister, Shira Ivy, and again from Appellant himself, was presented. Both attorneys offered sentencing points of view. (N.T. 11/8/2019 pp. 43-60) After consideration of all relevant sentencing factors, the following Orders and Judgements were entered:

As to case docketed under *CP-51-CR-0003017-2018*:

Count 1: Possession with Intent to Deliver a Controlled Substance, ungraded felony, under 35 § 780-113 §§ A30: Minimum five (5) years to maximum ten (10) years of state supervised term confinement, followed by five (5) years of state supervised probation;

Count 2: Intentional Possession of a Controlled Substance, ungraded misdemeanor, under 35 § 780-113 §§ A16: No further penalty due to merger with Count 1 for sentencing purposes.

As to case docketed under *CP-51-CR-0003018-2018*:

Count 1: Aggravated Assault, second degree felony (F2), under 18 § 2702 §§ A: Minimum five (5) years to maximum ten (10) years of state term incarceration, followed by five (5) years state supervised probation, to run concurrently with Count 1 of CP-51-CR-0003017-2018;

Count 2: Simple Assault, second degree misdemeanor (M2), under 18 § 2701 §§ A: No further penalty due to merger with Count 1;

Count 3: Recklessly Endangering Another Person, second degree misdemeanor (M2), under 18 § 2705: Minimum one (1) year to maximum two (2) years of state term incarceration, to run concurrently with Count 1;

Count 4: Terroristic Threats, first degree misdemeanor (M1), under 18 § 2706 §§ A1: No further penalty due to merger with Count 1.

The resulting aggregate sentence was a minimum period of confinement of five (5) years state incarceration to a maximum period of confinement of ten (10) years, followed by five (5) years reporting probation. Credit was accorded for all custodial time served. Rehabilitative and restorative conditions were inserted, including the direction that Appellant comply with any mental health and drug and alcohol diagnosis and treatment.

-10-

Appellant was also ordered to continually participate in a dual diagnosis form of counseling to address admitted mental health and alcohol and drug addictions, as well as seek and maintain vocational training and legitimate employment upon release. Additionally, the imposed sentences were conditioned upon compliance with random drug and alcohol testing, home and vehicle searches; Appellant was directed to refrain from being in any house or vehicle containing such illegal narcotic substances and firearms. Appellant was also ordered to participate in two hundred (200) hours of anger management classes and pay mandatory fines. [3]

On November 18, 2018, Appellant's trial counsel, Robert Gamburg, Jr., Esquire, filed a post-sentence motion that had reiterated the same arguments that had been presented within the pre-sentence motions to withdraw Appellant's guilty pleas. The Court denied the post-sentence motions following further hearing conducted on November 22, 2019 and sealed both matters.

Appellant, by and through his trial counsel Robert Gamburg, Esquire and Daniel Auerbach, Esquire, filed a Notice of Appeal on December 4, 2019. On January 7, 2020, following this Court's Order, a timely Statement of Matters Complained of on Appeal, pursuant to Rule 1925(b), was filed on behalf of Appellant. The following matters were raised verbatim therein:

1. "This Court erred in finding that Mr. Ivy pleaded guilty to the charges for which it sentenced Mr. Ivy. The guilty plea was not effectuated because any purported plea was part of Pa.R.Crim.P. 701 consolidated plea and sentencing before Judge Palumbo that was never completed. Instead the trial date which was scheduled should have been honored.

2. "This Court should have allowed Mr. Ivy to withdraw any plea, even if he effectively made one, as he moved to withdraw any plea before sentencing and as the withdrawal of the plea would not have prejudiced the Commonwealth. In

---

[3] Recognizing an error, on November 13, 2016, this Court listed a hearing *sua sponte* and amended its Sentencing Order in case docketed under *CP-51-CR-003018-2018* to correctly reflect Count 1 as Aggravated Assault graded as a second degree felony with a commensurate reduced concurrently running sentence of two and a half (2.5) years to five (5) years of state supervised confinement followed by five (5) years of state supervised similarly conditioned reporting probation. The overall aggregate sentencing scheme was not disturbed by this amendment.

-11-

addition, there are fair and just reasons to permit Mr. Ivy to withdraw any plea, including that:

a. Mr. Ivy testified that he was innocent in seeking to withdraw his plea.

b. Mr. Ivy had serious medical issues during prior plea colloquys (sic) that prevented him from understanding the nature and significance of any plea, including over-medication by jail authorities as Judge Palumbo explicitly recognized.

c. The Commonwealth divulged exculpatory information-the sustained Internal Affairs investigation into Officer Pavel Reznik-only after the plea colloquy despite it having been in the Philadelphia Police Department's possession for over four years."

## II.  DISCUSSION

Appellant's first claim as recited within Appellant's Statement of Matters Complained of on Appeal, was that this Court had erred in factually finding that Appellant had entered knowing, intelligent and voluntary guilty pleas to all charges in the two instant cases. Appellant cited Pa.R.Crim.P. 701 as both a shield and a sword to nullify the documented reality that Appellant had indeed tendered valid guilty pleas to all charges at issue. This rule however only operated as the vehicle by which Appellant had employed to tender guilty pleas before the jurist that had been governing the probationary supervision when the instant offenses had been committed. As reflected within the comment to this rule, the objective of Rule 701 is one of convenience and designed "to enable the court to sentence the defendant on all outstanding charges within the jurisdiction of the sentencing court at one time." [4]

---

[4] In pertinent part, Rule 701 states, "Before the imposition of sentence, the defendant may plead guilty to other offenses that the defendant committed within the jurisdiction of the sentencing court. When such pleas are accepted, the court shall sentence the defendant for all the offenses." Pa. R. Crim. P. 701 (A) and (B).  The comment to this rule recites that the objective is "to enable the court to sentence the defendant on all outstanding charges within the jurisdiction of the sentencing court at one time."

-12-

Contrary to Appellant's initial claim, this procedural device does not and did not enable Appellant to forum shop by demanding a different judge after it became apparent that the sentence that was going to be imposed by Appellant's chosen jurist was not to his liking. Zero option has been statutorily imbedded within Rule 701 to allow subsequent withdraw of tendered and accepted valid guilty pleas for reasons independent of concretely established rules of law. To the contrary, as Appellant had acknowledged during multiple written and verbal colloquies after being fully advised by both his counsel and the presiding jurist, the parameters of permission to withdraw the guilty pleas once accepted after arraignment were limited. No promises concerning future sentencing were made.

Appellant's acceptance of those limitations were amply reflected in the following verbal exchange on March 19, 2019 after he had been permitted to tender his guilty pleas to Judge Palumbo to avoid going to the rescheduled jury trial on March 25, 2019 with this Court as the presiding jurist:

> THE COURT: Okay. Sir, did you go over that form with your attorney? Do you understand your rights you're giving up in the form? Did you sign the form?
>
> MR. IVY: Yeah.
>
> THE COURT: Okay, you understand you're giving up your right to a trial by a jury, right?
>
> MR. IVY: Yes.
>
> THE COURT: And once you plead guilty, you understand you're left with only four issue you can raise on appeal. First, jurisdiction, but I have that. Secondly, legality of sentence. I will sentence you within the legal boundaries. Third, are you doing this of your own free will?
>
> MR. IVY: Yes.
>
> THE COURT: Okay. Four satisfied with your attorney?
>
> MR. IVY: Yes.

-13-

THE COURT: Okay. Now Commonwealth is going to ask you to agree to the facts in all of the police reports and so mark and move them into evidence now. In addition, Commonwealth is going to read some facts into the record. Okay? ..."

(N.T. 03/19/2019 pp. 5-6.)

Moreover, Appellant's request for arbitrary nullification of reality has never been adopted nor endorsed within any appellate review of Rule 701. As this Court reasoned after full hearing and incorporation of the arguments presented by the Commonwealth's attorney:

THE COURT: Okay. All right. Your motion is denied.

Rule 701, let's start with that. Rule 701 folks, as we all know or should know is a rule of permission that permits defendants to enter a plea before their supervising judge under that rule. It does not provide remedy of withdraw of a guilty plea should there come(s) a point in time where the Court, for whatever reason, makes a decision not to impose sentence...

The legitimate reasons for withdraw of a guilty plea are confined to what the law states and in this case the defendant does not meet that by any stretch of the imagination. I find the defendant's testimony to be incredible and disingenuous at best, and flat out---well, I'll leave it at that.

I find that upon a thorough read of all notes of testimony it is clearly apparent to this Court that the defendant's reaction to Judge Palumbo's indication preliminarily that he was going to send Mr. Ivy to the state upon imposition of sentence is what triggered all of the dispute and discourse.

He clearly established on multiple occasions that he was guilty of the offenses as stated in detail on multiple dates. His claim of innocence is not real and it's done to avoid- there is no legitimate basis to withdraw his guilty pleas, long story short.

I adopt the arguments of the Commonwealth as stated verbally as well as within their written brief. I will supplement as needed. So your permission to withdraw your guilty pleas is denied. I'm prepared to proceed to sentencing today. Is everyone else?

MS. GORDAN: I am, Your Honor.

MR. GAMBURG: Yes, Your Honor."

(N.T. 11/08/2019 pp. 41-43.)

-14-

Appellant's conduct over the course of time demonstrated the distinctly disingenuous basis of this claim and simultaneously refuted the secondary assertion that "fair and just reasons" had justified plea withdrawal permission. Even a cursory examination of the documented procedural history in each of the above-captioned cases, revealed Appellant's repetitive delaying tactics. This analysis of the transcribed record contemporaneously repudiated Appellant's "fair and just reasons" for withdraw including his protestations of innocence and lack of mental capacity or understanding of his rights and responsibilities.

On March 13, 2019, just six (6) days before the rescheduled jury trial date after approximately one year of largely defense-initiated delay, this Court had graciously permitted Appellant to plead guilty in both cases before Judge Palumbo via Pa.R.Crim.P. 701.[5] By that point in time, the then thirty (30) year old Appellant had been well acquainted with the mechanics of existing criminal justice procedures in at least two Pennsylvania counties, having been adjudicated both as a juvenile and convicted as an adult of multiple offenses. Appellant had repeatedly rebuffed rehabilitation efforts after having served in educational and drug treatment juvenile commitments, county and state supervised periods of confinement and while under probationary supervision.

Judge Palumbo had been the assigned governing jurist of Appellant's previously imposed and still running periods of probation and parole when he had committed the instant offenses. Notably, Appellant also had been facing multiple charges in two counties while under Judge Palumbo's governed period of probationary of supervision. As Mr. Gamburg had candidly repeated on this record, Appellant had hired Mr. Gamburg to ably represent him as counsel for ninety percent of all of his cases over the course of fourteen (14) plus years to date.

More importantly, on March 13, 2019 just before the defense request to forum shop was allowed via belated employment of Pa.R.Crim.P. 701, this Court had conducted a thorough colloquy of Appellant. The transcribed verbal exchange from this hearing unequivocally illuminated Appellant's mental competence and concrete understanding of all legal rights and responsibilities after detailed explanation had been provided. Appellant demonstrated full cognizance of his options, the nature of the pending charges, the length of maximum possible sentences, as well as the differences between a waiver and jury trial.

Appellant's mental acuity and firm understanding of all necessary components of the guilty plea process was established again on March 19, 2019. On that date as previously requested and granted by permission via Pa.R.Crim.P. 701, Appellant completed and tendered both written and oral colloquies before his requested jurist, the Honorable Frank Palumbo and proffered open or non-negotiated open guilty plea to all charges, including Possession with Intent to Deliver and Possession of a Controlled Substance, docketed under *CP-51-CR-0003017-2018*, and Aggravated Assault, Simple Assault, Recklessly Endangering Another Person, and Terroristic Threats, docketed under *CP-51-CR-0003018-2018*. The transcribed record reflected that Appellant had been duly informed of his rights and unambiguously admitted to the factual basis for each plea. (N.T. 3/19/19, pp. 3- 14).

The information provided within the verbal and written colloquies conducted of Appellant on March 19, 2019 summarily mirrored the data that had been previously conveyed by this Court on March 13, 2019 to insure that Appellant's future decision-making had been fact based and competent. Just as he appeared before this Court six (6) days earlier on March 19, 2019, Appellant had appeared to be clear and cogent in his intention and stated desire to accept responsibility for

-16-

his conduct and to plead guilty to the charges in each case. Appellant's comprehension and voluntary decision-making capabilities were amply confirmed.

Moreover, the reflection of Appellant's clear thought and purpose was further amplified in the March 19, 2019 hearing held before Appellant's chosen jurist, the Honorable Frank Palumbo, when during the additional colloquy conducted the assigned prosecutor read aloud and supplemented the supporting facts. Once again Appellant unequivocally admitted his complicity. In every capacity Appellant had knowingly, intentionally, and voluntarily entered guilty pleas to all charges at that time. (N.T. 3/19/19, p. 14).

The claim of medical intoxication or lack of mental capacity as a fair and just reason for being granted permission to withdraw his guilty pleas was not supported by this record. Appellant verbally, and in the introduced executed written forms, had admitted to the supporting facts on multiple occasions. Thus, this Court was well justified in factually finding that the tardy "claim of innocence" had been falsely averred.

Appellant's Statement of Matters Complained of on Appeal further asserted that this Court should have allowed Appellant to withdraw his guilty pleas, "since the motion to withdraw was filed prior to sentencing and the Commonwealth would not have been prejudiced." *See Appellant's 1925(b) Statement of Matters Complained of on Appeal.* Once again, the transcribed record of the instant proceedings demonstrated this Court's reasonable exercise of discretion in not allowing Appellant to withdraw his validly tendered and accepted pleas of guilt.

The decision whether to permit a defendant to withdraw a guilty plea remains within the sound discretion of the trial court. *Commonwealth v. Unangst*, 2013 PA Super 196, 71 A.3d 1017, 1019 (Pa. Super. 2013) (quotation omitted). However, the standard applied differs somewhat depending on whether the defendant seeks to withdraw the plea before or after sentencing. When

a defendant seeks to withdraw a plea after sentencing, he "must demonstrate prejudice on the order of manifest injustice." *Commonwealth v. Yeomans*, 2011 PA Super 137, 24 A.3d 1044, 1046 (Pa. Super. 2011). However, a pre-sentence motion to withdraw is decided under a more liberal standard. Pursuant to Pennsylvania Rule of Criminal Procedure 591, "At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of a plea of guilty or nolo contendere and the substitution of a plea of not guilty." *Commonwealth v. Vorrado*, 159 A.3d 32 (Pa. Super. Ct. 2016) (*citing* Pa.R.Crim.P. 591(A)).

In the seminal decision *Commonwealth v. Forbes*, 450 Pa. 185, 299 A.2d 268 (Pa. 1973), the Pennsylvania Supreme Court first defined the parameters for granting a pre-sentence motion to withdraw: "[I]n determining whether to grant a pre-sentence motion for withdrawal of a guilty plea, 'the test to be applied by the trial courts is fairness and justice.' If the trial court finds 'any fair and just reason', withdrawal of the plea before sentence should be freely permitted, unless the prosecution has been 'substantially prejudiced.' *Id.* at 271 (internal citations omitted). Just five years ago, the Supreme Court reaffirmed its *Forbes* ruling from 1973, stating: "[The] *Forbes* decision reflects that: there is no absolute right to withdraw a guilty plea; trial courts have discretion in determining whether a withdrawal request will be granted; such discretion is to be administered liberally in favor of the accused; and any demonstration by a defendant of a fair-and-just reason will suffice to support a grant, unless withdrawal would work substantial prejudice to the Commonwealth." *Commonwealth v. Carrasquillo*, 631 Pa. 692, 115 A.3d 1284, 1291-1292 (Pa. 2015).

Since the *Forbes* decision in 1973, courts have grappled with what constitutes a "fair and just" reason for withdrawal of a guilty plea. In *Commonwealth v. Randolph*, the Supreme Court

adopted the view that a defendant's "bald assertion of innocence" was sufficient. See *Commonwealth v. Randolph*, 553 Pa. 224, 718 A.2d 1242, 1244 (Pa. 1998). However, in *Commonwealth v. Carrasquillo*, the Supreme Court overturned the bright-line and per se standards adopted in *Randolph* and elaborated on what constitutes a "fair and just reason" for withdrawal of a guilty plea, by stating: "Presently, we are persuaded by the approach of other jurisdictions which require that a defendant's innocence claim must be at least plausible to demonstrate, in and of itself, a fair and just reason for presentence withdrawal of a plea. More broadly, the proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice. The policy of liberality remains extant but has its limits, consistent with the affordance of a degree of discretion to the common pleas courts." *Carrasquillo*, supra, 115 A.3d at 1292 (citation omitted and emphasis supplied).

The rule set forth in *Carrasquillo* is two-pronged. To grant a presentence motion to withdrawal a guilty plea, the trial court must determine: (1) whether the defendant has demonstrated that permitting withdraw of the plea would promote fairness and justice, and (2) whether withdrawing the plea would substantially prejudice the Commonwealth. See *Carrasquillo*, 115 A.3d at 1291-2, 631 Pa. at 704-06. As to the first prong, when determining whether the defendant has demonstrated that permitting withdraw of the plea would promote fairness and justice, courts consider many factors, including, but not limited to: the plausibility or implausibility of the defendant's asserted innocence, the defendant's prior statements and admissions of guilt, the timing of the defendant's assertion, whether the nature of the defendant's request is a means to manipulate the court system, and the extent of the undisputed preferred evidence. *Id.*

-19-

When a defendant makes his asserted innocence in sentencing allocution after previously making incriminatory statements on the record about his guilt, his asserted innocence is not probable. *See Carrasquillo*, 115 A.3d at 1291-2, 631 Pa. at 704-06. In *Carrasquillo*, the defendant was arrested for sexually assaulting two girls. While in custody, the defendant made inculpatory statements during interrogation and eventually entered open guilty pleas to all charges against him. *Id.* at 1285, 694. At the plea colloquy, the Commonwealth entered proffered evidence including the defendant's inculpatory statements, victim testimony, video surveillance footage, and DNA evidence linking defendant to the assaults. *Id.* The defendant continued with his guilty plea, and a sentencing hearing was scheduled. At the sentencing hearing, the Commonwealth again entered proffered testimony, including a new report that detailed the defendant as a sexual predator. When both sides rested, the defendant gave a statement during allocution, and asked for his plea to be withdrawn because he was innocent, framed, and only pled guilty to protect one of the victims. *Id.* at 1286-87, 695-96.

In *Carrasquillo*, the trial court had denied the defendant's motion, the defendant appealed, and his sentence had been overturned by the Superior Court of Pennsylvania. Upon appeal by the Commonwealth, however, the Supreme Court of Pennsylvania reversed the ruling and held that the defendant's asserted innocence had not been at least plausible. *Id.* at 1291-93, 704-06. The Court reasoned that because the asserted innocence first came during sentencing allocution- three months after entering his guilty plea and making multiple inculpatory statements - and because the assertion seemed to come in response to his disdain for characterization of him in the Commonwealth's report, the trial court had not erred in denying his motion. *Id.* at 1292-93, 705-06.

This refined rationale has been consistently followed by other appellate decisions in our Commonwealth of Pennsylvania. For instance, it has been firmly decided that a defendant does not make a plausible claim of innocence as grounds for withdrawal of a guilty plea when he previously testifies to committing the crime and only asserts his innocence in response to realizing the length of his prison term. In so doing, he is attempting to manipulate the criminal justice system. See *Commonwealth v. Blango*, 150 A.3d 45, 48 (Pa. Super. 2016); see also *Commonwealth v. Stork*, 737 A.2d 789, 790-91 (Pa. Super. 1999) (holding that once a defendant has entered a guilty plea, he may not satisfy the fair and just standard if his asserted innocence contradicts statements he made in prior hearings when the guilty plea was entered).

The appellate ruling and reasoning announced in *Commonwealth v. Blango, 150 A.3d 45, 48 (Pa. Super. 2016)* is instructive. In *Blango*, the defendant had entered an open guilty plea to the charges of murder, conspiracy, and associated offenses, and agreed to cooperate with the Commonwealth and testify against his co-defendants and provide information regarding other crimes. However, when the defendant was called to testify at the trial of one of his co-defendants, he had repudiated information he previously provided authorities, and violated the memorandum of agreement. *Id.*

Thereafter, the Commonwealth submitted a sentencing memorandum seeking an aggregate sentence of thirty-five (35) to seventy (70) years of incarceration, and one day later, the defendant filed a motion to withdraw his guilty plea. The trial court denied the motion, defendant appealed, and the Superior Court found that defendant had not made a plausible claim of innocence to support withdrawing his guilty plea. *Id.* at 48. The Court reasoned that the timing of the defendant's motion to withdraw was a sufficient reason to make the defendant's claimed innocence implausible. *Id.*

-21-

The instant matters are analogous to *Carrasquillo* and *Blango* because of the suspicious timing of Appellant's motion to withdraw his guilty plea and his actual motivation as revealed within defense counsel's final editorial comment: "I'm not sending him upstate." (N.T. 07/16/2019 p. 45), In the instant matter, Appellant requested to withdraw his guilty plea only after the sentencing judge, the Honorable Frank Palumbo, had expressed agreement with the prosecution's recommendation that Appellant be placed in a state supervised secure facility. This timing indicated that Appellant's motion was nothing more than a deliberate attempt to manipulate the justice system through forum shopping and creating of undue delay rather than a genuine assertion of innocence.

In the instant matter, Appellant's initial trial date was scheduled for December 3, 2018 and postponed to March 25, 2019 at the defense's request. However, on March 19, 2019 in Courtroom 505, Appellant entered an open guilty plea to all charges pending against him. On May 2, 2019, Appellant once more acknowledged his guilt and through his attorney had requested a county sentence. The Commonwealth requested a sentence of two (2) years to four (4) years state confinement, followed by six (6) months of probation, citing Appellant's extensive criminal history, history of rehabilitative attempts by the judicial system, and potential danger to the community as reasoning for the sentence.

Defense counsel subsequently stated that the Commonwealth was unreasonable in its sentence recommendation, that Appellant wished to withdraw his guilty plea, and that Appellant was not competent to proceed with sentencing. Sentencing was deferred until July 16, 2019. At the sentencing hearing on July 16, 2019, nearly four (4) months after first pleading guilty and eight (8) months after his initially scheduled trial date, Appellant again acknowledged his guilt, admitted the repeated proffered facts as presented by the Commonwealth, and proceeded with his sentencing

-22-

argument. Appellant only asserted innocence after recognizing that Judge Palumbo one again had been inclined to accept the Commonwealth's recommended sentence. Based on the foregoing, it was plainly apparent that Appellant's motion to withdraw his guilty plea had not met the requisite standard to show that it would promote the interests of fairness and justice. Therefore, the first prong of the *Carrasquillo* test was not satisfied.

It is firmly established as a second prong *Carrasquillo* requirement that even where there is a "fair and just" reason to permit withdrawal of a guilty plea, withdrawal should not be permitted if the prosecution has been "substantially prejudiced." See *Blango*, 150 A.3d at 51. Prejudice is shown when the Commonwealth would be "placed in a worse position than it would have been had the trial taken place as scheduled." *Commonwealth v. Kirsch*, 2007 PA Super 240, 930 A.2d 1282, 1286 (Pa. Super. 2007).

In the instant matter, if Appellant's motion to withdraw was granted, the prosecution would have been placed in a worse position than it would have been had the trial taken place. Indeed, the Commonwealth's attorney had verbally advised Appellant, his counsel and the presiding judge on March 19, 2019 that there may be resulting future prejudice due to late timing of the plea entries. (N.T. 03/19/2019 p. 15).

Moreover, the Commonwealth was ready for trial on December 3, 2018 and would have been ready for trial on March 25, 2019. However, on November 27, 2018, less than a week prior to the first scheduled jury trial date, the Commonwealth received a video clip from defense counsel purporting to show part of the arrest of Appellant. At that time, the Commonwealth requested the name of the defense videographer and potential eyewitness, which had not been previously provided. The defense did not provide the name and the Commonwealth continually renewed its

-23-

request, to no avail, thereby depriving the Commonwealth of the opportunity to investigate the witness and impeding relevant discovery of this videographer.

In addition, as more than two years had elapsed since Appellant's arrest, the Commonwealth was placed in a substantially worse position to present all witnesses and to find and investigate the alleged defense witness, should a name ever be provided. Therefore, if the Court had permitted Appellant's motion to withdraw his guilty plea, the Commonwealth would have been substantially prejudiced.

Additionally, the law of this Commonwealth "presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise." *Commonwealth v. Reid*, 2015 Pa. Super 135, 117 A.3d 777, 783 (2015) (quoting *Commonwealth v. Pollard*, 2003 Pa. Super 334, 832 A.2d 517, 523 (Pa. Super.2003)). The Pennsylvania Superior Court explained:

> "[O]nce a defendant has entered a plea of guilty it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Therefore, where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evidence that defendant understood the nature of the charges against him, the voluntariness of the plea is established. A defendant is bound by the statements he makes during his plea colloquy, and may not assert grounds for withdrawing the plea that contradict statements made when he pled."

*Commonwealth v. McCauley*, 2001 Pa. Super 301, 797 A.2d 920 (Pa. Super. 2001) (quoting *Commonwealth v. Stork*, 1999 PA Super 212, 737 A.2d 789, 790-91 (Pa. Super. 1999), appeal denied 564 Pa. 709, 764 A.2d 1068 (2000))

In the cases at bar, on at least three different occasions and after multiple thorough colloquies, Appellant knowingly, intentionally, and voluntarily pled guilty as charged and failed to demonstrate that he had been unaware of the consequences of his actions when entering guilty pleas. Appellant has not provided the Court with any reason to believe he is innocent of the crimes.

-24-

Although Appellant claimed that he "had serious medical issues during prior plea colloquies that prevented him from understanding the nature and significance of any plea," this Court in its soundly discretion, had reasonably determined that Appellant had been mentally competent to enter pleas of guilt, especially because he had acknowledged his guilt on different dates. *See* Appellant's 1925(b) Statement of Matters Complained of on Appeal.

Appellant's final claim to justify permission of withdraw of his knowing, intelligent and voluntary guilty pleas was that the Commonwealth "divulged exculpatory information—the sustained Internal Affairs investigation into Officer Pavel Reznik - only after the plea colloquy despite it having been in the Philadelphia Police Department's possession for over four years." See *Appellant's 1925(b) Statement of Matters Complained of on Appeal.* Appellant broadly asserted that the delayed transfer of the documents at issue had constituted a potential *"Brady"* violation. However, even if Appellant had properly specified reasons to support his belief that a *Brady* violation had occurred, dismissal of this complaint was warranted because there had been no qualifying *"Brady"* violation that would have justified conviction reversal.

In *Commonwealth v. Brady,* the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 90, 83 S. Ct. 1194, 1198 (1963). "[S]uch evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene,* 527 U.S. 263, 281, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999) (quoting *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375). Ultimately, there are three necessary components that demonstrate a violation of the *Brady* strictures: (1) the evidence was favorable to the accused, either because it is exculpatory or because it impeaches;

-25-

(2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued. *Id.* at 281, 119 S.Ct. 1936.

Instantly, the defense's *Brady* reference concerned an irrelevant disclosure of an internal investigation of uniformed Philadelphia Police Officer Pavel Reznik who was listed in the paperwork as someone who, among many others, had later responded to the arrest scene as back up support for the primary relevant witnesses and initial arresting officers, namely Officer Lally and Officer McCullough. No reference to this back up and thus subsequently responding to scene officer had been made during any of the multiple recitations of supporting facts to which Appellant had readily admitted his guilt.

Moreover, the documentation at issue that had been submitted and reviewed by this Court simply reflected that Officer Reznik had been internally reprimanded in 2015 for incorrectly recording something in his patrol log regarding the timing of his response to an obviously unrelated and distant event. Nothing further had resulted from that disciplinary action that had followed that ambiguously referenced internal review process in excess of five years ago. That internal decision had zero relevance to the instant matters and thus was completely immaterial to its outcome. Moreover, the Commonwealth had passed the information regarding the irrelevant decision of an independent body from five years prior regarding a non-essential, non-eyewitness or even mentioned officer to the defense as it had obtained such information.

Furthermore, the Court conducted an evidentiary hearing on November 22, 2019 to address Appellant's post-sentence motions during which the lack of involvement of Officer Reznick in Appellant's case was discussed at length. The Commonwealth identified the fact that they never had any intention of calling Officer Reznick to testify because he had not witnessed anything indicative of Appellant's culpability. The Court noted the following: "The circumstances to which

-26-

this defendant entered a plea of guilt did not include any reference to Officer Reznick in any appreciable manner. The arresting officers at issue in this case that form the basis of the conviction, and the supporting facts therein, were Highway Patrol Officers Lally and McCullough." (N.T. 11/22/2019, p. 7). Thus, the defense post-sentence motions had been properly denied.

Allowing Appellant to withdraw his plea would be unfair to the Commonwealth and would substantially impair its ability to fairly prosecute Appellant. The undue delays were intentionally created by the defense's gamesmanship. Upon a thorough review of all submitted relevant data, the Court reasonably denied Appellant's motion to withdraw his knowing, intelligent and voluntary pleas of guilt that had been tendered and accepted because he had been entirely motivated to manipulate justice. Withdraw of the guilty pleas would not have promoted fairness and justice in any true sense and would have substantially prejudice the Commonwealth's efforts to proceed at this late date. Therefore, Appellant had failed to demonstrate any legitimate basis for relief.

## III. CONCLUSION

In the absence of any meritorious challenge that can be found in the reviewable record, Appellant had not articulated any viable allegation in accordance with the requisites of a claim predicated upon withdraw of a guilty plea. In summary, this court has carefully reviewed the entire record and finds no harmful, prejudicial, or reversible error and nothing to justify the granting of Defendant's request for relief in this case. For the reasons set forth above, Defendant's judgment of sentence should be affirmed.

By the Court,

DATE: June 25, 2020

Anne Marie B. Coyle, J.

-27-